HEATHER STRUCKMAN *v.* J. WILLIAM BURNS,
COMMISSIONER OF TRANSPORTATION
(13136)

PETERS, C. J., HEALEY, SHEA, CALLAHAN and COVELLO, Js.

Argued October 8—decision released December 15, 1987

*Eugene A. Cooney,* with whom, on the brief, was *Joseph A. LaBella,* for the appellant (defendant).

*Ross T. Lessack,* with whom, on the brief, was *Edward T. Dodd, Jr.,* for the appellee (plaintiff).

SHEA, J. The principal issue in this appeal is whether medical reports and bills may be admitted into evidence under General Statutes § 52-174 (b) without testimony from the medical practitioner who prepared them where the medical practitioner resides outside of this state, and, therefore, cannot be subpoenaed for a trial in Connecticut.[1] We conclude that such reports and bills are admissible under the statute and find no error in the trial court's ruling to that effect.

A jury verdict was returned in favor of the plaintiff in this action under General Statutes § 13a-144, the defective highway statute, against the defendant, J. William Burns, commissioner of transportation of the state of Connecticut. The jury could reasonably have found that the plaintiff was driving her car on Route 64 in Middlebury on the night of December 23, 1981. The plaintiff, the sole occupant of the vehicle, lost control and ran off the road after skidding on a patch of ice. The plaintiff in her complaint asserted that the

[1] General Statutes § 51-1a (b) limits the jurisdiction of our state courts to the boundaries of this state: "The territorial jurisdiction of the supreme court, the appellate court, and the superior court shall be coextensive with the boundaries of the state."

defendant failed in various respects to maintain Route 64 in a reasonably safe condition. On appeal, the defendant does not challenge the jury's finding that he did not properly maintain this section of Route 64 on the night of the accident.

The defendant does dispute in this appeal the amount of the damages awarded to the plaintiff. The jury returned a verdict in the amount of $35,000. Aside from the testimony of the defendant, the only evidence concerning the extent of her damages consisted of medical reports and bills from several out-of-state medical practitioners. During the trial the defendant objected to, and now challenges the admission of medical reports and bills from three chiropractors and two dentists, who resided in Florida, Georgia and New Jersey.

On January 17, 1984, the plaintiff filed an offer of judgment in the amount of $14,250. Practice Book § 345. Following the verdict, the court awarded prejudgment interest in the amount of $13,716.47 under the authority of General Statutes § 52-192a. The defendant on appeal claims that the trial court erred in awarding prejudgment interest to the plaintiff because the state is not included within the general interest statute, and because the legislature has not otherwise agreed to waive the state's sovereign immunity in this regard. We conclude that the trial court erred in assessing prejudgment interest against the state.

I

A

The defendant claims that the trial court erred in interpreting the scope of General Statutes § 52-174 (b) which provides: "In all actions for the recovery of damages for personal injuries or death, pending on October 1, 1977, or brought thereafter, any party offering

in evidence a signed report and bill for treatment of any treating physician, dentist, chiropractor, osteopath, natureopath or podiatrist may have the report and bill admitted into evidence as a business entry and it shall be presumed that the signature on the report is that of the treating physician, dentist, chiropractor, osteopath, natureopath or podiatrist and that the report and bill were made in the ordinary course of business.'' The defendant maintains that the statute applies only to the reports and bills of medical practitioners residing in this state, who are within the subpoena power of our courts, but not to those of nonresident medical practitioners who cannot be compelled to testify at a trial in this state.

In support of his argument, the defendant cites subsection (c) of the statute, which provides as follows: ''This section shall not be construed as prohibiting either party or the court from calling the treating physician, dentist, chiropractor, osteopath, natureopath or podiatrist as a witness.'' The defendant maintains that subsection (c) indicates that subsection (b) was meant to apply only to resident medical practitioners who are within our court's subpoena authority. The defendant contends that subsection (b) must be read in light of subsection (c) because this court is obligated to read a statute as a whole. *State* v. *Parmalee,* 197 Conn. 158, 161–62, 496 A.2d 186 (1985).

The language of the statute does not restrict it to resident medical practitioners. Rather, it applies ''[i]n all actions'' and to ''any treating physician.'' General Statutes § 52-174 (b). This court does not have to look further than the statute for the legislative intent. ''If the words of a statute are clear, the duty of a reviewing court is to apply the legislature's directive since where the wording is plain, courts will not speculate as to any supposed intention because the question before a court then is not what the legislature actually intended, but

what intention it expressed by the words that it used. *P.X. Restaurant, Inc.* v. *Windsor,* 189 Conn. 153, 159, 454 A.2d 1258 (1983); *Verrastro* v. *Sivertsen,* 188 Conn. 213, 220, 448 A.2d 1344 (1982); *Robinson* v. *Unemployment Security Board of Review,* 181 Conn. 1, 6, 434 A.2d 293 (1980)." *Duguay* v. *Hopkins,* 191 Conn. 222, 228, 464 A.2d 45 (1983). If the General Assembly intended to require the actual availability of the treating physician in the jurisdiction as a prerequisite to the admissibility of his medical report and bill for treatment, it could have explicitly so stated. Courts may not " 'read into clearly expressed legislation provisions which do not find expression in its words.' " *Brunswick Corporation* v. *Liquor Control Commission,* 184 Conn. 75, 81; 440 A.2d 792 (1981), quoting *International Business Machines Corporation* v. *Brown,* 167 Conn. 123, 134, 355 A.2d 236 (1974).

We agree with the defendant that a statute should be read as a whole. Subsection (a) of § 52-174 allows medical reports and bills to be admitted even if the medical practitioner or engineer who prepared them is beyond the effective subpoena power of our courts and is unable to testify at trial where that person is deceased, or is disabled, either mentally or physically.[2]

[2] "[General Statutes] Sec. 52-174. ADMISSIBILITY OF RECORDS AND REPORTS OF CERTAIN EXPERT WITNESSES AS BUSINESS ENTRIES. (a) In all actions for the recovery of damages for personal injuries or death, (1) if a physician, dentist, chiropractor, osteopath, natureopath, podiatrist, professional engineer or land surveyor has died prior to the trial of the action, or (2) if a physician, dentist, chiropractor, osteopath, natureopath, podiatrist, professional engineer or land surveyor is physically or mentally disabled at the time of the trial of the action to such an extent that he is no longer actively engaged in the practice of his profession, the party desiring to offer into evidence the written records and reports of the physician, dentist, chiropractor, natureopath, osteopath or podiatrist concerning the patient who suffered the injuries or death and the reports and scale drawings of the professional engineer or land surveyor concerning matter relevant to the circumstances under which the injuries or death was sustained shall apply to the court in which the action is pending for permission to

In light of subsection (a) it cannot be said that subsection (c) necessarily requires us to construe subsection (b) as excluding nonresident medical practitioners simply because they are not subject to a subpoena in this state.

The defendant also argues that the legislature clearly intended when it passed No. 77-226 of the 1977 Public Acts, which created General Statutes § 52-174 (b) in its present form, to give defendants or the court a right to subpoena the treating medical practitioner under subsection (c). Representative Ernest Abate stated: "In no event, however, if the report is in fact admitted without testimony of the physician, is the attorney precluded in fact from calling the physician in a different stage in the trial." 20 H.R. Proc., Pt. 8, 1977 Sess., p. 2994.

Immediately after Representative Abate made this statement, however, Representative Vincent Villano clarified how this bill would apply to medical practitioners who no longer resided in the state. He said: "There's a lot of miscarriage of justice [that] occurs in civil action cases where the doctors who have treated a patient, move out of the state or move out of the town. Some are staff doctors in hospitals. They spend two or three years and they're gone, and their personal reports, while the hospital record is there, their personal reports are not, not . . . to be introduced in evidence. And I say this will remedy a great deal of injustice that occurs when the doctor moves and his testimony cannot be introduced in the trial." Id. The

introduce the evidence. Notice of the application shall be served on the adverse party in the same manner as any other pleading. The court to which the application is made shall determine whether the person is disabled to the extent that he cannot testify in person in the action. Upon the court finding that the person is so disabled, the matters shall be admissible in evidence as a business entry in accordance with the provisions of section 52-180 when offered by any party in the trial of the action."

clear implication of Representative Villano's remarks was that the reports and bills of a medical practitioner would be admissible even if the medical practitioner had moved outside of the state and, therefore, was beyond the subpoena power of our courts. No one in the legislature raised any objection to Representative Villano's remarks, and the house voted immediately thereafter in favor of the bill. The legislative history of subsection (b) supports the conclusion that it was meant to apply to nonresident medical practitioners.

There is additional evidence that § 52-174 (b) is meant to include nonresident treating medical practitioners. The General Assembly by enacting Public Acts 1978, No. 78-140, removed from an earlier version of § 52-174 (b) a provision which required the clerk of the court upon motion of a party or the court to subpoena the medical expert whose written report was being offered under the terms of the statute. Further, § 52-174 (b) characterizes such medical reports as "business entries" and the legislature in General Statutes § 52-180 (b) has provided that such business entries ought not be rendered inadmissible either by a party's failure to produce the person or persons making the writing or by a party's failure to show that such persons are unavailable as witnesses.

In view of its legislative history and wording, we hold that § 52-174 (b) permits the admission of the medical reports and bills of nonresident treating medical practitioners even if they are beyond the subpoena power of our courts, and cannot be called to testify at a trial.

### B

The defendant contends that if General Statutes § 52-174 (b) allows plaintiffs to submit into evidence the medical reports and bills of nonresident medical practitioners then the statute violates the defendant's right

of cross-examination under the United States and Connecticut constitutions. We find no violation of either our federal or state constitution.

As the defendant maintains, the right of cross-examination does have a constitutional basis in the confrontation clauses of our federal and state constitutions. U.S. Const., amend. VI; Conn. Const., art. I, § 8. These provisions, however, are expressly limited to criminal prosecutions. U.S. Const., amend. VI; Conn. Const., art. I, § 8. In the context of a civil case this court has said: "The right of cross-examination is not a privilege but is an absolute right and if one is deprived of a complete cross-examination he has a right to have the direct testimony stricken." *Gordon* v. *Indusco Management Corporation,* 164 Conn. 262, 271, 320 A.2d 811 (1973). The court in *Gordon,* however, appears to have been referring to a common law right rather than a constitutional right. We need not decide in this case, however, whether the provisions of our federal and state constitutions against depriving a person of his property without due process of law afford some protection against legislative restriction of cross-examination in civil cases. U.S. Const., amend. XIV, § 1; Conn. Const., art. I, §§ 8, 10. Without reaching the constitutional issue, we conclude that § 52-174 (b) does not significantly curtail the right of cross-examination because it does not preclude taking the deposition of a nonresident medical practitioner whose report or bill may be offered into evidence at a trial.

In enacting § 52-174 (b), the legislature undoubtedly considered the prevailing evidentiary treatment of hospital records. Hospital records have been considered business records for many years in Connecticut and are admissible when the three requirements for business records under General Statutes § 52-180 are satisfied. *Kelly* v. *Sheehan,* 158 Conn. 281, 284–85, 259 A.2d 605 (1969); *D'Amato* v. *Johnston,* 140 Conn. 54, 58–62, 97

A.2d 893 (1953). The records of hospitals receiving state aid may be admitted into evidence under General Statutes § 4-104 upon certification of three requirements by the record-keeper. *State* v. *Jeustiniano,* 172 Conn. 275, 280–81, 374 A.2d 209 (1977).

Both of these statutes allow hospital records containing expert opinions concerning diagnosis to be admitted without the in-court testimony of the treating medical practitioner. Section 4-104 provides in part: "Any and all parts of any such record or copy, if not otherwise inadmissible, shall be admitted in evidence without any preliminary testimony, if there is attached thereto the certification in affidavit form of the person in charge of the record room of the hospital or his authorized assistant indicating that such record or copy is the original record or a copy thereof, made in the regular course of the business of the hospital, and that it was the regular course of such business to make such record at the time of the transactions, occurrences or events recorded therein or within a reasonable time thereafter." Section 52-180 (b) provides: "The writing or record shall not be rendered inadmissible by (1) a party's failure to produce as witnesses the person or persons who made the writing or record, or who have personal knowledge of the act, transaction, occurrence or event recorded or (2) the party's failure to show that such persons are unavailable as witnesses. Either of such facts and all other circumstances of the making of the writing or record, including lack of personal knowledge by the entrant or maker, may be shown to affect the weight of the evidence, but not to affect its admissibility." We have held that hospital records, including medical opinions contained therein relevant to diagnosis; *D'Amato* v. *Johnston,* supra, 61; may be admitted into evidence without the testimony of the persons who made the entries even in a criminal pro-

ceeding, and have held that this procedure does not violate a defendant's right of cross-examination. *State* v. *Jeustiniano,* supra.

The defendant contends that there is a significant difference between the procedures we have approved pursuant to § 4-104 and § 52-180 compared to those set forth in § 52-174 (b). Section 52-180 has been interpreted to require the proponent to show: (1) that the document was made in the regular course of business; (2) that it was the regular course of business to make such a record; and (3) that the record was made when the act, transaction or event occurred or shortly thereafter. C. Tait & J. LaPlante, Connecticut Evidence (1976) § 11:14, p. 227. Section 4-104 imposes the same three requirements. Section 52-174 (b) permits medical reports and bills to be "admitted into evidence as a business entry," but does not require that these three prerequisites be established.

The defendant argues that § 52-174 (b) violates his right of cross-examination because the statute does not require that a foundation be established for the reliability of the evidence in the medical reports and bills. He maintains that § 4-104 and § 52-180 do not infringe upon a defendant's right of cross-examination because the reliability of the evidence in hospital records is guaranteed by the three-pronged requirement. He concedes that the bills admitted as exhibits would qualify as business records. The defendant, nonetheless, contends that the medical reports were not prepared in the ordinary course of business, but for litigation. The same objection could be raised with respect to § 52-174 (a), however, which allows the report of a deceased or disabled physician or engineer to be admitted into evidence even when a party is unable to call the person who wrote the report into court to testify. *State* v. *Piskorski,* 177 Conn. 677, 731–33, 419 A.2d 866, cert. denied, 444 U.S. 935, 100 S. Ct. 283, 62 L. Ed. 2d 194 (1979). Despite

the impossibility of cross-examining dead or disabled witnesses to whom the statute applies; the statute permits their reports to be introduced.

Section 52-174 (b) does not deprive a defendant of his right of cross-examination. While it is true that the defendant does not have the power by subpoena to force an out-of-state witness to travel to Connecticut for trial, General Statutes § 52-148c allows a party to apply to the court for a commission to take the deposition of an out-of-state witness. Once the commission is granted by the court in this state, a subpoena can be obtained in the proposed deponent's state to force the deponent to attend a deposition in his state.

The defendant recognizes that his right of cross-examination may be implemented by the use of a deposition, but is concerned with the costs associated with deposing an out-of-state witness. If the plaintiff had chosen to depose the nonresident medical practioners rather than introduce their reports at trial, the defendant could hardly have objected on the ground that he would be obliged to incur additional expenses for travel in order to exercise his right of cross-examination. At least for one in the position of the defendant, to whom as an agent of the state its ample resources are available, the additional expense involved in taking a deposition is not a matter of constitutional concern.

## II

The defendant argues that even if the reports of nonresident medical practitioners are admissible, the trial court erred in this case by admitting such reports where it had no evidence that the persons whose opinions the reports contained were in fact competent experts.

Ordinarily a trial court must determine the qualifications of a proposed expert before he may testify. See *McKiernan* v. *Caldor, Inc.,* 183 Conn. 164, 167–68, 438

A.2d 865 (1981). The legislature, however, may allow the introduction of the opinion of an expert without the need to lay a detailed foundation as to qualifications. Hospital records can be admitted into evidence without any live testimony about whether the persons who prepared or signed the records were qualified to render the expert opinions therein if the three requirements for business records are met. General Statutes §§ 52-180 and 4-104.

The medical reports at issue were on the letterhead of each medical practitioner or had some other identifying mark and were each signed by a medical practitioner. Section 52-174 (b) states: "[I]t shall be presumed that the signature on the report is that of the treating [medical practitioner] . . . and that the report and bill were made in the ordinary course of business." The legislature has determined that all that is needed to comply with the statute is the signature of the treating medical practitioner. No requirement exists concerning qualifications. A defendant may, however, challenge the qualifications of an out-of-state medical practitioner at a pretrial deposition, and, therefore, his right of cross-examination is not abridged by this provision of the statute.

## III

The defendant argues that even if the reports of nonresident medical practitioners can be admitted, the trial court erred in this case by admitting these reports when they contain expert opinions that are not stated with the requisite standard of reasonable medical probability. In his brief, the defendant focused on the reports of two medical practitioners, Milo E. Hermann and Keith D. Werner. Hermann, a Florida dentist, stated in his report: "In my opinion, although not all the disease presently found in this patient's dentition is a direct result of the car accident, it was the predispos-

ing factor in the resultant inability to provide the necessary care needed for prevention of what has occurred dentally." Werner, a New Jersey chiropractor, gave the following opinion: "Mrs. Struckman received cervical and lumbosacral myofascitis from the accident and with her long history of back surgery, etc. there is no way of telling the extent of the damage but I certainly believe that there is some permanent ligamentous damage in her back." In a subsequent medical report, Werner wrote: "Her back was still giving her pain in the areas that were injured at the time of the automobile accident. Unfortunately, there has been very little improvement which *could* indicate this problem *could* be one that *could* continue for the duration of her life." (Emphasis added.)

Section 52-174 (b) in no way eliminates a plaintiff's burden of establishing the relevancy of the expert opinions expressed therein. "To be entitled to damages a plaintiff must establish a causal relation between the injury and the physical condition which he claims resulted from it. *Bates* v. *Carroll,* 99 Conn. 677, 679, 122 A. 562 [1923]. This causal connection must rest upon more than surmise or conjecture. *Witkowski* v. *Goldberg,* 115 Conn. 693, 696, 163 A. 413 [1932]; *Green* v. *Stone,* 119 Conn. 300, 306, 176 A. 123 [1934]. A trier is not concerned with possibilities but with reasonable probabilities. *Richardson* v. *Pratt & Whitney Mfg. Co.,* 129 Conn. 669, 672, 30 A.2d 919 [1943]. The causal relation between an injury and its later physical effects may be established by the direct opinion of a physician, by his deduction by the process of eliminating causes other than the traumatic agency, or by his opinion based upon a hypothetical question. *Bates* v. *Carroll,* supra, 679." *Boland* v. *Vanderbilt,* 140 Conn. 520, 525, 102 A.2d 362 (1953).

Expert opinions must be based upon reasonable probabilities rather than mere speculation or conjecture if

they are to be admissible in establishing causation. *Healy* v. *White,* 173 Conn. 438, 443–46, 378 A.2d 540 (1977). To be reasonably probable, a conclusion must be more likely than not. Id., 444. Whether an expert's testimony is expressed in terms of a reasonable probability that an event has occurred does not depend upon the semantics of the expert or his use of any particular term or phrase, but rather, is determined by looking at the entire substance of the expert's testimony. *Aurora* v. *Miami Plumbing & Heating, Inc.,* 6 Conn. App. 45, 46, 502 A.2d 952 (1986); see also *Ralph* v. *Mr. Paul's Shoes, Inc.,* 572 S.W.2d 812, 814 (Tex. 1978). When reports are the substitute for testimony, the entire report should be examined, not only certain phrases or words. *Aurora* v. *Miami Plumbing & Heating, Inc.,* supra.

The defendant contends that an expert in his testimony or in a report must employ the "magic words" that his opinion was "reasonably probable." We reject the proposition that certain formulaic words are essential when an expert renders an opinion. Id. "A word is not a crystal, transparent and unchanged, it is the skin of a living thought and may vary greatly in color and content according to the circumstances and the time in which it is used." *Towne* v. *Eisner,* 245 U.S. 418, 425, 38 S. Ct. 158, 62 L. Ed. 372 (1918). As long as it is clear that the opinion of the expert is expressed in terms of probabilities, the opinion should be submitted into evidence for a jury's consideration. See *Slepski* v. *Williams Ford, Inc.,* 170 Conn. 18, 22–23, 364 A.2d 175 (1975).

It is not necessary for this court to determine whether the disputed portions of the reports met the standard of reasonable probability.[3] The defendant during the

---

[3] The defendant did not object to the admission of a report by Dr. P. G. Batson, an orthopedic surgeon, dated December 29, 1983, and does not challenge its relevancy in this appeal.

trial simply objected to all but one of the reports offered by the plaintiff and failed to make more specific objections. The party opposing the admission of a medical report must make a specific objection to exclude a particular portion of that report. "The defendants also press their claim that it was error to admit the entire record without excluding those parts which were irrelevant to a determination of the issues in the case. Though this court has recognized that it may be necessary to exclude parts of an otherwise admissible record; *Marko* v. *Stop & Shop, Inc.,* 169 Conn. 550, 561, 364 A.2d 217 [1975]; *Temple* v. *F.W. Woolworth Co.,* 167 Conn. 631, 633, 356 A.2d 880 [1975]; *Ianni* v. *Daily,* 153 Conn. 445, 217 A.2d 707 [1966]; the principle is not relevant to this case since counsel failed, at trial, to designate the portions of the record he found objectionable. For this court now to rule parts of the record inadmissible would require us to lay down a rule that the trial court is under a duty to sift through the record and, acting on its own, exclude objectionable evidence." *State* v. *Jeustiniano,* supra, 279–80. An opposing party must explain why he believes a particular passage in a medical report is irrelevant, is speculative, or is otherwise inadmissible. Id.; *Ianni* v. *Daily,* supra, 449.

### IV

The defendant's final claim is that the trial court erred in awarding the plaintiff prejudgment interest. The defendant argues that our statute, allowing interest where a defendant has failed to accept an offer of judgment equal to or less than the amount recovered; General Statutes § 52-192a; does not apply to the state because the legislature has not expressly waived the state's sovereign immunity in this area.[4] We agree.

---

[4] "[General Statutes] Sec. 52-192a. OFFER OF JUDGMENT BY PLAINTIFF. ACCEPTANCE BY DEFENDANT. COMPUTATION OF INTEREST. (a) After commencement of any civil action based upon contract or for the recovery of

General Statutes § 13a-144 allows "[a]ny person injured in person or property through the neglect or default of the state or any of its employees by means of any defective highway . . . to recover damages sustained thereby against the commissioner in the superior court." The statute specifically excludes the imposition of "costs or judgment fee[s]" against the state. The plaintiff argues that the legislature has waived its sovereign immunity in this variety of civil action for all types of damages except costs or judg-

money only, the plaintiff may before trial file with the clerk of the court a written 'offer of judgment' signed by him or his attorney, directed to the defendant or his attorney, offering to settle the claim underlying the action and to stipulate to a judgment for a sum certain. The plaintiff shall give notice of the offer of settlement to the defendant's attorney, or if the defendant is not represented by an attorney, to the defendant himself. Within thirty days after being notified of the filing of the 'offer of judgment,' the defendant or his attorney may file with the clerk of the court a written 'acceptance of offer of judgment' agreeing to a stipulation for judgment as contained in plaintiff's 'offer of judgment.' Upon such filing, the clerk shall enter judgment immediately on the stipulation. If the 'offer of judgment' is not accepted within thirty days, the 'offer of judgment' shall be considered rejected and not subject to acceptance unless refiled. Any such 'offer of judgment' and any 'acceptance of offer of judgment' shall be included by the clerk in the record of the case.

"(b) After trial the court shall examine the record to determine whether the plaintiff made an 'offer of judgment' which the defendant failed to accept. If the court ascertains from the record that the plaintiff has recovered an amount equal to or greater than the sum certain stated in his 'offer of judgment,' the court shall add to the amount so recovered twelve per cent annual interest on said amount, computed from the date such offer was filed in actions commenced before October 1, 1981. In those actions commenced on or after October 1, 1981, the interest shall be computed from the date the complaint in the civil action was filed with the court if the 'offer of judgment' was filed not later than eighteen months from the filing of such complaint. If such offer was filed later than eighteen months from the date of filing of the complaint, the interest shall be computed from the date the 'offer of judgment' was filed. The court may award reasonable attorney's fees in an amount not to exceed three hundred fifty dollars, and shall render judgment accordingly. This section shall not be interpreted to abrogate the contractual rights of any party concerning the recovery of attorney's fees in accordance with the provisions of any written contract between the parties to the action."

ment fees. The plaintiff contends that the legislature would have expressly mentioned interest along with costs and judgment fees if it meant to exclude that type of damages from its waiver of sovereign immunity. Section 52-192a allows an offer of judgment to be filed "[a]fter the commencement of any civil action." The plaintiff argues that when these two statutes are read together the clear implication is that the legislature has waived its sovereign immunity to exempt the state from interest awards.

It is a matter for the legislature, not this court, to determine when our state's sovereign immunity should be waived. "The question whether the principles of governmental immunity from suit and liability are waived is a matter for legislative, not judicial, determination. *Rogan* v. *Board of Trustees,* 178 Conn. 579, 582, 424 A.2d 274 (1979); *Bergner* v. *State,* 144 Conn. 282, 286–87, 130 A.2d 293 (1957)." *Duguay* v. *Hopkins,* 191 Conn. 222, 228, 464 A.2d 45 (1983). Sovereign immunity may be waived only through a statute. Id. Any statutory waiver of immunity must be narrowly construed. Id. "The state's sovereign right not to be sued may be waived by the legislature, provided clear intention to that effect is disclosed 'by the use of express terms or by force of a necessary implication.' *Baker* v. *Ives,* [162 Conn. 295, 298, 294 A.2d 290 (1972)]; *Murphy* v. *Ives,* [151 Conn. 259, 262–63, 196 A.2d 596 (1963)]." Id.

At best, the plaintiff has shown that there is some ambiguity concerning whether the "damages" referred to in § 13a-144 include interest. The fact that the legislature specifically excluded costs and judgment fees but not interest may suggest that it meant to waive the state's sovereign immunity for interest under this statute. It is also quite possible that the legislature thought that interest could be awarded only if it were specifically mentioned in the statute, or that the legislature simply failed to consider whether interest should be

awarded. In the absence of clear legislative intent, this court will not interpret a statute as waiving the state's sovereign immunity.

Section 52-192a permits an offer of judgment in "any civil action." A literal reading of this statute might suggest that any plaintiff may collect prejudgment interest from the state. When a generalized statute allows plaintiffs to collect certain varieties of damages in particular types of civil actions, however, it does not waive a state's sovereign immunity in that area unless there is an express waiver. In *State* v. *Chapman,* 176 Conn. 362, 366, 407 A.2d 987 (1978), the issue was whether General Statutes § 52-257, which allows costs to be taxed against civil parties, applied to the state. We said: "In the absence of a specific statutory provision allowing the taxation of costs against the state, this court is required to adhere to the widely recognized principle that statutes relating to costs and authorizing the imposition of costs in various kinds of actions or proceedings, or under various prescribed circumstances, which do not in express terms mention the state, are not enough to authorize imposing costs against the state. *State ex rel. Foote* v. *Bartholomew,* 111 Conn. 427, 150 A. 308 [1930]; annot., 72 A.L.R.2d 1399, § 9. We conclude that the general language of § 52-257 governing taxable costs does not apply to the state." Id.

Courts in many other jurisdictions have held that a statute that generally allows interest awards does not waive a state's sovereign immunity unless there is an express provision to that effect in the statute. *McKee-Berger-Mansueto, Inc.* v. *Board of Education,* 626 F.2d 559, 566 (7th Cir. 1980) (applying Illinois law); *Department of Health & Social Services* v. *Crossan,* 424 A.2d 3, 5 (Del. 1980); *Brown* v. *State Highway Commission,* 206 Kan. 49, 51–52, 476 P.2d 233 (1970); 81A

C.J.S., States § 268 (1977); 72 Am. Jur. 2d, States § 89 (1974); annot., 24 A.L.R.2d 928, 974 (1952). We agree with this view.

There is error in part, and the case is remanded to the trial court with direction to modify the judgment so as to eliminate the award of $13,716.47 in prejudgment interest.

In this opinion the other justices concurred.