CORA SOKOLOWSKI *v.* MEDI MART, INC.
(9086)

DUPONT, C. J., NORCOTT and LANDAU, Js.

Argued December 14, 1990—decision released March 19, 1991

*Barbara B. Sacks,* with whom, on the brief, was *Edward W. Gasser,* for the appellant (defendant).

*Richard C. Mahoney,* for the appellee (plaintiff).

NORCOTT, J. The defendant, Medi Mart, Inc., appeals from the judgment rendered after a jury trial in favor of the plaintiff. The plaintiff brought the underlying action to recover damages for injuries and losses she allegedly sustained as a result of a fall at the defendant's store in Simsbury on December 30, 1985. On February 28, 1990, the jury returned a verdict of $45,000 in favor of the plaintiff and further determined that there was no comparative negligence involved in the case. On March 5, the defendant moved to set aside the verdict. The trial court denied the defendant's motion on April 4, 1990.

On appeal, the defendant claims that the trial court improperly (1) denied its motion in limine seeking the exclusion of evidence of the defendant's offers to pay the plaintiff's medical bills, (2) allowed the plaintiff to present evidence of the defendant's subsequent failure to pay her medical bills, (3) excluded certain medical

reports of the plaintiff's treating physician, (4) allowed the admission of the plaintiff's medical records concerning injuries that were unrelated to her accident, and (5) denied its motion for a directed verdict.

The jury could reasonably have found the following facts from the evidence presented at trial. On December 30, 1985, the plaintiff, a business invitee of the defendant, slipped on a foreign substance and fell to the floor at the defendant's store. The offending substance was located about eight to ten feet from a counter where three of the defendant's employees were working and within a similar distance from at least five customers who had been standing there for a period of approximately fifteen minutes prior to the plaintiff's fall. No witness testified to having heard a bottle break during this time period.

As a result of the fall, the plaintiff sustained a 5 percent permanent partial disability of her cervical spine and incurred $1100 in medical expenses and $500 in lost wages. Other facts pertinent to our decision will be discussed later in this opinion.

The defendant first claims that the trial court improperly denied its motion in limine, filed before trial, which sought to exclude any testimony about the defendant's offers to pay the plaintiff's medical bills. The defendant argues that evidence of such offers was inadmissible because they were offers to compromise or settle.

During the argument on its motion in limine, the defendant unsuccessfully contended that the trial court should rule that any statements made by its assistant manager relating to the store's payment of the plaintiff's medical bills were inadmissible as offers of settlement and compromise. The defendant only briefly argued, however, that the store's assistant manager allegedly told the plaintiff: "Anything you need or want, you know, just let us know," and "If you have

any medical bills, bring them in, and we'll take care of them."[1] Given the brevity and substance of the defendant's motion in limine, we cannot say that the trial court's conclusion that the assistant manager's comments were not offers of settlement was clearly erroneous, and that that court therefore should not have denied the defendant's motion.

The defendant further argues, however, that the trial court committed reversible error when it later allowed the plaintiff to testify that the defendant offered to pay her medical bills. At trial, the plaintiff testified that when she returned to the defendant's store two days after the accident, an assistant manager directed another store employee to "give her anything she wants, and [there will] be no charge for it." The plaintiff also testified that the assistant manager then told her concerning "any bills that occurred to bring them in and Medi Mart would take care of them." The defendant did not object to this testimony.

We first address the plaintiff's argument that this claim is unreviewable because the defendant failed to object to the plaintiff's testimony. We disagree. The defendant alerted the trial court to the issue that it now presses on appeal. The plaintiff's testimony at trial

---

[1] The breadth of the relevant colloquy was as follows:

"The Court: What form were those statements made?

"[Defense Counsel]: My understanding, I guess the evidence would be there was a verbal statement on behalf of, made by the assistant manager of the store.

"The Court: Is this when the accident took place, while she was there in the store having fallen? What did he say? What is he alleged to have said?

"[Defense Counsel]: Alleged to have said 'Anything you need or want, you know, just let us know,' and later they were discussing this for approximately twenty minutes, he said, 'If you have any medical bills, bring them in, and we'll take care of them.'

"The Court: Is that it? Court does not see that as settlement discussions, counselor. So I will not preclude that testimony.

"[Defense Counsel]: Note my exception for that, please, Your Honor.

"The Court: Noted for the record."

clearly raised the issue of whether the defendant had made offers of settlement or compromise. Given the trial court's previously expressed sentiment about the issue, it is not surprising that the defendant did not object. We agree with the defendant that the failure to object to the plaintiff's testimony after its motion in limine was denied is not a waiver of the defendant's claim as long as that claim remains the same on appeal, as it does here. See Practice Book § 4185;[2] see also *West Haven Sound Development Corporation* v. *West Haven,* 207 Conn. 308, 311 n.2, 541 A.2d 858 (1988); *Cohen* v. *Cohen,* 11 Conn. App. 241, 248, 527 A.2d 245 (1987).

Turning next to the merits of the defendant's first claim, we conclude that the trial court should not have allowed the assistant manager's hearsay statements into evidence after it had clearly been alerted to the possibility of the introduction of those statements, which could have been interpreted as offers to settle or compromise. "To promote the settling of disputes, offers of compromise, if made to buy peace, are not admissible against the party making them as an admission of liability. *Stranahan* v. *East Haddam,* 11 Conn. 507, 512–519 (1836)." C. Tait & J. LaPlante, Connecticut Evidence (2d Ed.) § 11.5.4 (b). Offers to pay medical bills fall within this principle. See *Danahy* v. *Cuneo,*

---

[2] "[Practice Book] Sec. 4185. ERRORS CONSIDERED

"The supreme court shall not be bound to consider a claim unless it was distinctly raised at the trial or arose subsequent to the trial. The supreme court may in the interests of justice notice plain error not brought to the attention of the trial court.

"In jury trials, where there is a motion, argument, or offer of proof or evidence in the absence of the jury, whether during trial or before, pertaining to an issue that later arises in the presence of the jury, and counsel has fully complied with the requirements for preserving any objection or exception to the judge's adverse ruling thereon in the absence of the jury, the matter shall be deemed to be distinctly raised at the trial for purposes of this rule without a further objection or exception provided that the grounds for such objection or exception, and the ruling thereon as previously articulated, remain the same."

130 Conn. 213, 33 A.2d 132 (1943).[3] The assistant manager's comments in this case, however, are ambiguous. " 'Where it is not clear whether the statement is an offer of compromise or an admission of liability [or other fact] and the motive of the declarant is subject to speculation and conjecture, the statement must be excluded.' " *Simone Corporation* v. *Connecticut Light & Power Co.*, 187 Conn. 487, 490, 446 A.2d 1071 (1982). Thus, the trial court should have excluded the assistant manager's hearsay statements, which could have easily been construed as an offer to settle or compromise.

We next turn to the defendant's second, closely related claim. The defendant alleges that, after permitting the plaintiff to testify as to the statements of its assistant manager, the trial court wrongfully allowed her to present evidence of the defendant's failure to pay the medical bills that it had promised to cover.

During direct examination, the plaintiff testified that, after she spoke with the assistant manager, the defendant refused to pay her medical bills for certain X rays. The defendant immediately objected on the ground of relevancy. The trial court first indicated that the evidence might be relevant to the issue of damages or the "out-of-pocket costs as part of [the] case." The court then stated that "testimony has come in that the store has indicated they would take care of bills, so the explanation that at a point they weren't doing that is, I think, in the context of that testimony, acceptable testimony. I'm going to allow that." The defendant again duly excepted to the court's ruling.

Whatever its reasoning, the trial court should not have allowed this evidence because, under our analy-

---

[3] Federal Rule of Evidence 409 similarly provides: "Evidence of furnishing or offering or promising to pay medical, hospital, or similar expenses occasioned by an injury is not admissible to prove liability for the injury."

sis, the exclusion of the improper evidence of settlement or compromise renders the evidence of the failure to pay certain medical bills irrelevant.

In any event, the jury heard testimony that we have found to be inadmissible, and our next inquiry is whether the court's evidentiary rulings constituted harmful error. To be reversible, evidentiary error must be both wrong and harmful. *Sanderson* v. *Steve Snyder Enterprises, Inc.,* 196 Conn. 134, 142, 491 A.2d 389 (1985); *DeCarufel* v. *Colonial Trust Co.,* 143 Conn. 18, 21, 118 A.2d 798 (1955). The appellant bears the burden of establishing the specific harmfulness of the error. See *Braun* v. *Edelstein,* 17 Conn. App. 658, 554 A.2d 1102, cert. denied, 211 Conn. 803, 559 A.2d 1136 (1989). We find that the defendant has failed to meet this burden.

We first note that the defendant never identifies any specific harm it may have suffered from the trial court's improper introduction of the challenged evidence. The defendant suggests that the jury was prejudiced because the evidence allowed them to develop a "bad guy" opinion of the drug store. Our review of the record reveals, however, that the defendant itself, on cross-examination of the assistant manager, brought out that it was the store's policy to offer to pay the medical bills of persons in the position of the plaintiff. Thus, the court allowed the defendant, in turn, to offset any "bad guy" impression through this cross-examination, which would tend to suggest to the jury that the store had a humane policy toward accident victims.

We also note that the entirety of the testimony concerning this claim was extremely brief. Indeed, the assistant manager could not even recall having received any X-ray bills for payment from the plaintiff. Neither counsel argued the defendant's alleged promise to pay and subsequent nonpayment of the plaintiff's medical

bills to the jury during final arguments, and the trial court did not charge on these issues. Our review leads us to conclude, because of the paucity of this unemphasized testimony, that the jury was not prejudiced by such evidence. Thus, the defendant cannot prevail on these claims.

The defendant's next two claims concern the trial court's rulings on certain medical records introduced by the defendant and the plaintiff respectively.

The first of these claims is that the court should not have excluded the notes of the plaintiff's treating physician offered into evidence by the defendant. The defendant claimed that the notes were relevant and necessary to impeach the plaintiff's testimony by showing that her claimed injuries were related to certain of her preexisting medical conditions. The court allowed the defendant to present an offer of proof during which it first offered twenty years of notes and then reduced the offer to notes for four specific dates.[4] The court then questioned both the defendant's counsel and the plaintiff about the relevancy of the notes. The court found that (1) the physician's notes did not qualify as "medical records" under General Statutes § 52-174 and (2) the notes were mostly illegible and could not be explained without medical testimony. Although the trial court ruled that the notes were irrelevant and therefore inadmissible, the court did give the defendant the opportunity to subpoena the authoring physician and call him as a witness to explain and clarify his notes. The defendant declined the court's offer.

We agree with the trial court's determination that, without the clarification of competent medical testimony, the medical notes were irrelevant and their admission would have caused the jury to speculate as

[4] The defendant also unsuccessfully attempted to offer a typed interpretation of the notes immediately before it rested its case.

to the plaintiff's preexisting injuries. It is axiomatic that the trial court has wide discretion in determining matters of relevancy. *State* v. *Higgins,* 201 Conn. 462, 470, 518 A.2d 631 (1986). At best, a review of the notes indicates that they refer to a multitude of infirmities suffered by the plaintiff over a period of years, but did not specifically relate to any injury similar to those alleged by the plaintiff in this case.

The court's questioning of the plaintiff during the voir dire of this offer demonstrates the difficulty the jury would have had with the vague medical references expressed in a series of mainly illegible physician's notes. We need not determine whether the notes qualified as medical records under the statute since we conclude that the trial court correctly ruled that the offered evidence had no relevance to the issue of preexisting injury. Additionally, the trial court offered to accommodate the defendant by allowing it sufficient opportunity to substantiate the relevancy of the offer of proof during the court's voir dire and time in which to call the plaintiff's treating physician as a witness.

The defendant next claims that the trial court improperly allowed into evidence other medical reports prepared by the plaintiff's treating physician. These records were introduced pursuant to General Statutes § 52-174 (b) to establish a causal connection between the plaintiff's injuries and the accident. The defendant claims that the reports should have been excluded because it did not state in terms of reasonable, medical probability the causal relationship between the plaintiff's injury and the accident. We disagree.

"Section 52-174 (b) in no way eliminates a plaintiff's burden of establishing the relevancy of the expert opinions expressed [in the report.]" *Struckman* v. *Burns,* 205 Conn. 542, 554, 534 A.2d 888 (1987). The causal relation between an injury and its later physical effects

may be established by the direct opinion of a physician. Id. "Whether an expert's testimony is expressed in terms of a reasonable probability that an event has occurred does not depend upon the semantics of the expert or his use of any particular term or phrase, but rather, is determined by looking at the entire substance of the expert's testimony. . . . When reports are the substitute for testimony, the entire report should be examined, not only certain phrases or words." (Citations omitted.) Id., 555. Thus, in *Struckman,* our Supreme Court rejected the notion that a physician's report must employ certain talismanic words to convey that the opinion expressed therein is reasonably probable.

In the present case, our review of the exhibit reveals that the trial court correctly concluded that the reports were relevant and therefore admissible. The court properly determined that there was a "common thread of treatment" throughout the reports between the injuries treated by the physician and those that had resulted from the accident. It concluded further that the reports were based on reasonable medical probability. We are not persuaded that the court's decision was incorrect.

We also find that there is no merit to the defendant's claim that it was prejudiced by the physician's reports because their contents increased the sympathies of the jury for the plaintiff.

The defendant's final claim rests on the court's denial of its motion for a directed verdict. The essence of the claim is that the plaintiff failed to prove that the defendant had actual or constructive notice of the claimed defective condition. We disagree.

"The rules controlling appellate review of a directed verdict are well settled. 'Directed verdicts are not generally favored. A trial court's decision to direct a verdict can be upheld only when the jury could not

reasonably and legally have reached any other conclusion. *Pinto* v. *Spigner,* 163 Conn. 191, 192–93, 302 A.2d 266 (1972); *Console* v. *Nickou,* 156 Conn. 268, 270, 240 A.2d 895 (1968); *Santor* v. *Balnis,* 151 Conn. 434, 435, 199 A.2d 2 (1964). In reviewing the trial court's decision directing a verdict [for the defendant] and denying a subsequent motion to set it aside, this court considers all the evidence, including reasonable inferences, in the light most favorable to the plaintiff. *Pinto* v. *Spigner,* supra; *Leary* v. *Johnson,* 159 Conn. 101, 104, 267 A.2d 658 (1970).' *Sestito* v. *Groton,* 178 Conn. 520, 522, 423 A.2d 165 (1979); see *Puro* v. *Henry,* 188 Conn. 301, 303, 449 A.2d 176 (1982)." *Bleich* v. *Ortiz,* 196 Conn. 498, 500–501, 493 A.2d 236 (1985).

Against these standards we conclude that the trial court was correct in denying the defendant's motion for a directed verdict. Viewed in the light most favorable to the plaintiff, the record reveals that the plaintiff, after standing near a counter for approximately fifteen minutes, moved a few paces toward the store's pharmacy area, where she slipped and fell. No one heard a bottle break during that fifteen minute period. The jury could have reasonably found from the evidence that there was a substance on the floor and that the substance was aftershave lotion.[5] Furthermore, the evidence revealed that the floors of the store were swept nightly and that the accident occurred around 5 p.m. Finally, the evidence showed that the store had no formal policy for periodic checks for breakages or spills.

Although there was no proof at trial that the defendant had actual notice of the defective condition, i.e., the spill, the jury could have reasonably drawn from the evidence discussed above, the inferences to support a finding of constructive notice. The determinative

[5] The assistant manager testified that the report he had made shortly after the accident stated that the source of the spill was aftershave lotion.

question is whether the defective condition existed for such a length of time that the defendant, in the exercise of reasonable care, should have discovered it and remedied it. *Morris* v. *King Cole Stores, Inc.,* 132 Conn. 489, 492–93, 45 A.2d 710 (1946). It is settled that circumstantial evidence can establish constructive notice. Id. The jury could have concluded from the totality of the evidence that the spilled aftershave lotion had remained on the floor for more than fifteen minutes. From this fact, the jurors could have inferred that the defendant, in the exercise of reasonable care, should have detected and remedied the condition. We are therefore not persuaded by the defendant's argument that the jury engaged in speculation regarding the defendant's constructive notice of the defective condition.

The judgment is affirmed.

In this opinion the other judges concurred.