[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
The plaintiff Administratrix alleges that the defendants were negligent in failing to render appropriate medical care to her decedent, Sammy Butler and that as the direct result of that negligence, Butler died of advancing and serious alcoholic cirrhosis. The defendants have now moved for summary judgment on the eve of trial, contending that they are entitled to judgment as a matter of law because the plaintiff does not have an expert witness who can testify that any alleged negligence on the part of the defendants was the proximate cause of Butler's death or of any of the damages alleged by the plaintiff.
Summary judgment must be granted if the pleadings, affidavits, and other documentary proof show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Conn. Practice Book § 384; Suarez v. Dickmont Plastics Corp. , 229 Conn. 99, 105,639 A.2d 507 (1994); Telesco v. Telesco, 187 Conn. 715,447 A.2d 752 (1982); Yanow v. Teal Industries, Inc., 178 Conn. 262,422 A.2d 311 (1979). A "material" fact is one which will make a difference in the outcome of the case. Hammer v. Lumberman'sMutual Casualty Co., 214 Conn. 573, 578, 573 A.2d 699 (1990). In CT Page 116 ruling upon a summary judgment motion, the court merely determines whether an issue of fact exists, but does not try the issue if it does exist. Michaud v. Gurney, 168 Conn. 431, 362 A.2d 857 (1975).
The purpose of summary judgment is to eliminate the delay and expense accompanying a trial where there is no real issue to be tried. Dowling v. Kielak, 160 Conn. 14, 273 A.2d 716 (1970);Dorazio v. M.B. Foster Electronic Co., 157 Conn. 226, 253 A.2d 22
(1968). "In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party." Connecticut Bank Trust Co. v. Carriage LaneAssociates, 219 Conn. 772, 780-81, 595 A.2d 334 (1980).
Once the moving party has submitted evidence in support of the motion for summary judgment, the opposing party must present evidence that demonstrates the existence of some disputed factual issue. Bartha v. Waterbury House Wrecking Co., 190 Conn. 8, 11-12;Farrell v. Farrell, 182 Conn. 34, 38 (1980); Rusco Industries,Inc. v. Hartford Housing Authority, 168 Conn. 1, 5 (1975). It is not enough for the opposing party merely to assert the existence of such a disputed issue. "Mere assertions of fact . . . are insufficient to establish the existence of a material fact and, therefore, cannot refute evidence properly presented to the court under Practice Book § 380." Bartha v. Waterbury House WreckingCo., supra, 190 Conn. at 12. "The movant has the burden of showing the nonexistence of such issues but the evidence thus presented, if otherwise sufficient, is not rebutted by the bald statement that an issue of fact does exist." Kasowitz v. MutualConstruction Co., 154 Conn. 607, 613 (1967), quoting Boyce v.Merchants Fire Ins. Co., 204 F. Sup. 311, 314 (D. Conn. 1962);Burns v. Hartford Hospital, 192 Conn., 451, 455 (1984).
The party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denial but must set forth specific facts showing that there is genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256,106 S.Ct. 2505, 2514, 91 L.Ed.2d 202, 217 (1986), cited in Salomon v.Krusiewicz, 14 CLT 456 p. 31, 3 CSCR 84a (Super.Ct., New Britain, 10/6/88).
To prevail in a medical malpractice action, a plaintiff must establish the following elements through expert testimony: 1) the applicable standard of care; 2) the defendant's breach of that standard; and 3) that the breach proximately caused plaintiff's injuries. See Pisel v. Stamford Hospital, CT Page 117180 Conn. 314, 334-342 (1980)."Expert opinion must be based upon reasonable probabilities rather than mere speculation or conjecture if they are to be admissible in establishing causation." Struckman v. Burns, 205 Conn. 542, 554,534 A.2d 888 (1987). Where it is undisputed that the plaintiff lacks such expert testimony, Connecticut courts have held that summary judgment is appropriate. See, Stowe v. McHugh,46 Conn. App. 391 (1997) and Guzze v. New Britain Hospital,16 Conn. App. 480, 484-485, cert. denied 209 Conn. 823 (1988).
In this case, the plaintiff does have an expert, Alan A. Wartenberg, M.D., who will testify concerning the appropriate standard of care and alleged violations of that standard of care by the defendants. However, that expert has indicated that he will not testify, based upon reasonable probabilities, that any of these alleged violations of the standard of care proximately caused Butler's death or any of the other damages claimed by the plaintiff. The plaintiff has disclosed no other expert, and trial is scheduled to begin as soon as the present motion for summary judgment has been resolved.
Dr. Wartenberg's deposition was taken on October 22, 1998. He was critical of the care and treatment rendered by Dr. Barse during office visits on August 10 and 17, 1992. (Butler was subsequently admitted to the Veteran's Administration Hospital on August 18, 1992, where he died about two weeks later.) However, he also testified as follows:
 Q: "And do you have an opinion as to whether or not Dr. Barse's alleged failure to make a diagnosis of anemia on August 10 of 1992 was a proximate cause of Mr. Butler's death?
 A: A proximate cause, no. I would not say it is a proximate cause."[1]
* * *
 Q: "Do you have an opinion as to whether or not Mr. Butler would have survived had he been admitted on August 10 of 1992?
A: I don't believe there is a way to know that."[2]
* * * CT Page 118
 Q: "Would you agree that even if Mr. Butler had been admitted [to the Veteran's Administration Hospital] on August 10, 1992 he would have died?
 A: I believe — I don't know I can say that it is more likely than not. It may be. I don't believe — I am not a gastroenterologist or he[m]atologist. He certainly faced serious mortality on presentation.
Q: Okay.
 A: I have no doubt. I think that overall his discriminant function when he was admitted to the VA indicated a mortality greater than 60 percent.
Q: Okay.
 A: So, at the time he was admitted to the VA, he was far more likely than not to die. Whether that function would have been any different on the 10th, I don't know because I don't have the numbers and it is not specifically the area of my expertise."[3]
* * *
 Q: "And do you have an opinion based upon a reasonable degree of medical probability whether the outcome [w]ould have been any different had Dr. Barse referred Mr. Butler to a gastroenterologist on August 10 of 1992?
 A: No. I don't. Similar to the previous question, I don't believe there is a way to know."[4]
* * *
 Q: "Again, am I correct in saying you can't state with any reasonable degree of medical probability whether or not the continuation of Librium affected the ultimate outcome?
 A: I cannot to a reasonable degree of medical probability."[5]
* * *
Q: Doctor, can you state with any reasonable degree of CT Page 119 medical probability what effect any delay in the admission of Mr. Butler to the Veteran's Administration Hospital had on the ultimate outcome?
 A: I can state as I did in my letter that I believe it may have contributed to the adverse outcome. I cannot state to a reasonable degree of medical probability that it would have changed the outcome."[6]
* * *
 Q: "And can you state with any reasonable degree of medical probability whether or not anything Dr. Barse did or did not do ultimately affected the outcome?
A: No."[7]
In short, Dr. Wartenberg has never stated the expert opinion that any actions or inactions on the part of the defendants, to a reasonable degree of medical probability, caused Butler's death or contributed to any of the damages claimed by the plaintiff. The plaintiff has argued, however, that Dr. Wartenberg's testimony and written report demonstrate his willingness to testify that the defendants' negligence "may" have been a factor in the plaintiff's demise, but this amounts only to a statement that a causal relationship is "possible", not that it that it is reasonably probable. Although the plaintiff's expert will testify regarding several alleged violations of the standard of care, he will not testify based upon reasonable probabilities that any alleged breach of the standard of care proximately caused the Butler's death. Without expert testimony regarding causation, the plaintiff cannot establish a prima facie medical malpractice case. Because she cannot, the undisputed facts demonstrate that at trial, the court would be required to direct a verdict for the defendants because no reasonable jury could conclude, without relying on speculation or conjecture, that any alleged negligence on the part of the defendants was a proximate cause of the damages and losses claimed by the plaintiff.
The motion for summary judgment is therefore granted.
Jonathan E. Silbert, Judge