[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The Trustees of Southern Connecticut State University ("SCSU"), State of Connecticut (the "State") and the Department of Public Works (collectively, the "Plaintiffs"), commenced this action on December 3, 1999, seeking declaratory and injunctive relief against Morn Brothers Auction Service Corp. a/k/a Morin Brothers Corp. ("Morin") and the American Arbitration Association ("AAA") (Morin and AAA are hereinafter referred to, collectively, as the "Defendants"). Specifically, the Plaintiffs seek to prevent the arbitration of certain claims asserted by Morin on the basis of sovereign immunity
On March 6, 1996, Morin, as the lowest qualified bidder, entered into a construction contract with the State for the renovation of a building at SCSU. Soon thereafter, Morin commenced work on the project which, though contractually intended for completion in June of 1996, was not substantially completed until early November of 1996.
As a result of certain disputes which arose between the parties, Morin, on September 27, 1997, filed a notice of claim with the Claims Commissioner. The notice of claim contained a factual recitation of acts and events occurring during the course of the relationship between the parties. On December 8, 1997, the State moved to dismiss Morin's claim on the grounds that the Claims Commissioner lacked jurisdiction over the claim because (i) he did not have authority to hear "claims, upon which suit is otherwise authorized by law. . . ."; C.G.S. § 4-142 (2); and (ii) Morin's claim was subject to suit pursuant to C.G.S. § 4-6[1].
Subsequent to the State's filing of the motion to dismiss but prior to any ruling thereon, Morin moved to amend its notice of claim. Morin's proposed Amended Statement of Claim, dated March 31, 1998, purported to clarify its original notice of claim by separating the allegations into three counts, each being distinguishable as a cause of action, as follows:
(a) Count One: Breach of Contract
This count purports to assert a claim based upon the state's alleged failure to perform its obligations under the contract;
(b) Count Two: Fraud in the Inducement
This count purports to assert a claim based upon misrepresentations CT Page 13985 allegedly made by the State during the bidding process and prior to the awarding of the contract (upon which Morin allegedly relied to its detriment);
(c) Count Three: Tortious Interference with Business Relations
This count purports to assert a claim based upon false communications allegedly made by the State to Morin's bonding company (prompting the bonding company to take actions and make demands which adversely impacted Morin's ability to meet its obligations).
Morin's Motion to Amend Claim was timely objected to by the State.
On June 19, 1998, the Claims Commissioner dismissed Morin's original notice of claim on the basis of its finding that "the Commissioner is without jurisdiction to entertain the claim under General Statutes §4-142." Exhibit 3 to Defendant's Memorandum of Law dated June 13, 2000 (Memorandum of Decision Re: Motion to Dismiss and Motion to Amend Claim) (hereinafter referred to as "Memorandum of Decision"). The Claims Commissioner did not address Morin's Motion to Amend Claim.[2]
Following the Commissioner's decision, Morin, on October 24, 1998, filed a demand for arbitration with the AAA. On May 7, 1999, Morin amended its demand to assert four counts: fraud in the inducement; breach of contract due to delay; breach of contract due to the State's failure to pay; and tortious interference with business relationships.
On August 19, 1999, the AAA held a preliminary hearing regarding the matter. The State objected to proceeding with arbitration on Morin's claims for fraud in the inducement and tortious interference with business relationships on the basis that said claims were barred by the doctrine of sovereign immunity. The AAA bifurcated the arbitration hearing and allowed Morin to proceed on the two breach of contract claims. The State then commenced this action seeking a preliminary and permanent injunction as well as a declaratory judgment preventing the presentation and adjudication of Morin's claims for fraud in the inducement and tortious interference with business relationships. The matter is now before the Court on Plaintiffs' request for injunctive relief, the parties having agreed that the preliminary injunction hearing could be converted to a hearing for permanent injunctive relief.
The issues presented are (i) whether Morin's claims of fraud in the inducement and tortious interference with business relationships are claims that fall within the ambit of the limited waiver of sovereign immunity provided by General Statutes § 4-61 and, if not, (ii) whether any actions taken by the State in connection with said claims CT Page 13986 constitute a waiver of sovereign immunity or should otherwise estop the State from asserting the same.
The doctrine of sovereign immunity, when applicable, imports not only an immunity from liability but an immunity from suit as well. Connecticut courts "have long recognized the . . . common-law principle that the state cannot be sued without its consent. . . ." (Internal quotation marks omitted.) Barde v. Board of Trustees, 207 Conn. 59, 64 (1988). "Sovereign immunity may be waived only through a statute." Struckman v.Burns, 205 Conn. 542, 558 (1987). "Any statutory waiver of immunity must be narrowly construed." Id. "The state's sovereign right not to be sued may be waived by the legislature, provided clear intention to that effect is disclosed by the use of express terms or by force of a necessary implication." (Internal quotation marks omitted.) Id.
Morin contends that C.G.S. § 4-61 provides the requisite statutory waiver of sovereign immunity for its claims to be heard in arbitration. "Section 4-61 of the General Statutes is an express waiver of sovereign immunity limited to actions brought against the state pursuant to certain types of contracts involving the construction of public works between the state and other parties." Berger, Lehman Associates, Inc. v. State,178 Conn. 352, 355 (1979).
Our Supreme Court has recently spoken on the extent of the waiver embodied in § 4-61. In Department of Public Works v. ECAPConstruction Co., 250 Conn. 553 (1999), the trial court, as here, was confronted with the State's application to enjoin the arbitration of certain claims before the AAA on the grounds that the claims did not fall within the parameters of the waiver of immunity contained in § 4-61. In ECAP, the State had contracted with ECAP for construction on a state project. Certain disputes arose between the State and ECAP resulting in a number of meetings between the parties for the purpose of resolving their differences. During those meetings, an offer of settlement was made by a representative of the State which, as characterized by ECAP, was extended as a firm offer which it accepted but, as characterized by the State, was extended as a tentative offer subject to approval by higher authorities (which approval was not obtained) and therefore not susceptible to acceptance. ECAP sought, in arbitration, to assert claims of breach and bad faith with respect to the State's failure to abide by the terms of the alleged settlement. The question before the trial court was whether the breach of the alleged settlement agreement constituted a "disputed [claim] under a [public works] contract" within the meaning of § 4-61. The trial court determined that the claim fell within the ambit of the statutory waiver and denied the State's request to enjoin arbitration of the claim. The Supreme Court, upon transfer of the State's appeal, reversed the trial court. In examining the language of § 4-61 (a), CT Page 13987 the Court observed that "[t]he legislature's use of the word `under,' as opposed to a broader term such as `related to,' `connected with' or `derived from,' indicates an intent to authorize only those disputed claims against the state that fail directly under the contract itself"ECAP, supra at 559. "To permit an action against the state for a claim that is related to or connected with a public works contract would expand the limited waiver of immunity inherent in § 4-61 beyond the statute's plain language." Id.[3]
As guided by the Supreme Court's decision in ECAP, this Court finds that Morin's claims for fraud in the inducement and tortious interference with business relationships do not fall within the purview of the limited waiver of sovereign immunity provided by General Statutes § 4-61. Morin's claim for fraud in the inducement essentially alleges that it relied to its detriment on misrepresentations made by representatives of the State in its decision to bid on and enter into a contract for the construction project at SCSU. The acts complained of occurred prior to the making of the contract between the State and Morin. By definition, therefore, the dispute in question did not arise under the contract. Morin's claim for tortious interference with business relationships, relating to communications made by representatives of the State to Morin's bonding company, cannot be viewed as arising under the contract. It is not enough that the conduct complained of relates to, is connected with or derives from the contractual relationship. As the ECAP Court noted, the claim must fall directly under the contract itself. Departmentof Public Works v. ECAP, supra at 559. Recognition of Morin's claim regarding the alleged interference of the State, as a third party, with Morin's relationship with its bonding company would, in the Court's opinion and as suggested by the ECAP Court, "expand the limited waiver of immunity inherent in § 4-61 beyond the statute's plain language."
Having determined that Mona's claims do not fall within the ambit of the limited waiver contained in § 4-61, the question then arises whether any other basis exists to support a determination that Mona should be permitted to pursue these claims in arbitration. The Court finds none.
Morin suggests that the Claims Commissioner authorized litigation of these claims and that his act in this regard is binding upon the State. it is true that the Claims Commissioner is statutorily empowered to authorize suit against the State. "When the Claims Commissioner deems it just and equitable, he may authorize suit against the state on any claim which, in his opinion, presents an issue of law or fact under which the state, were it a private person, could be liable." General Statutes § 4-160 (a). "When sovereign immunity has not been waived, the claims commissioner is authorized by statute to hear monetary claims against the CT Page 13988 state and determine whether the claimant has a cognizable claim." Krozserv. New Haven, 212 Conn. 415, 421 (1989), cert. denied, 493 U.S. 1036,110 S.Ct. 757, 107 L.Ed.2d 774 (1990). "Certain claims, however, are not within the power of the claims commissioner to hear and determine."Connecticut State Employees Assn. v. Dept. of Administrative Services,20 Conn. App. 676, 678, cert. denied, 214 Conn. 810 (1990); see also General Statutes § 4-142. "A claim against the state upon which suit is otherwise authorized by law is one such exception to the power of the commissioner to hear and determine." Connecticut State Employees Assn.v. Dept. of Administrative Services, supra at 678; see also General Statutes § 4-142 (2).
Had the Claims Commissioner actually exercised his authority to authorize suit, Morin would be correct in claiming that the State is bound by that decision. But that is not what occurred. The Claims Commissioner, in granting the State's motion to dismiss Mona's claim, found that he had no jurisdiction over the matter and, therefore, he never exercised his prerogative of authorizing the claims.[4]
Moreover, Morin's position suffers from the additional flaw that the forum through which it seeks redress (arbitration) is available only with respect to contracts subject to the waiver of immunity contained in § 4-61 (a). See § 4-61 (b). As previously discussed, the claims in question do not fall within the scope of that statute. Hence, even if this Court were to conclude that the Claims Commissioner authorized suit on the subject claims, Morin would have no basis (absent agreement by the State) to pursue those claims through arbitration (as opposed to proceeding in an action commenced in the Superior Court).
Finally, the Court has considered whether the State, by seeking a dismissal of the claims presented to the Claims Commissioner, has waived its immunity or should otherwise be estopped from asserting it.[5] As a matter of law, the Court cannot find that the State waived its immunity when representatives of the office of the Attorney General sought the dismissal of the claims before the Claims Commissioner. "It is well established that the State is immune from suit unless the State, by appropriate legislation, consents to be sued. Baker v. Ives, 162 Conn. 295,298 (1972). The Attorney General and his representatives are members of the Executive. "[T]he Executive is not the appropriate authority to waive the State's immunity. Legislative action is necessary for the State to consent to suit." Berger, Lehman Associates Inc. v. State ofConnecticut, 178 Conn. 352, 357 (1979).
For similar reasons, the State cannot be deemed to be estopped from asserting its immunity as a consequence of seeking the dismissal of Morin's claims before the Claims Commissioner.
CT Page 13989 [A]ny claim of estoppel is predicated on proof of two essential elements: the party against whom estoppel is claimed must do or say something calculated or intended to induce another to believe that certain facts exist and to act on that belief; and the other party must change its position in reliance on those facts, thereby incurring some injury. . . . In addition, estoppel against a public agency is limited and may be invoked: (1) only with great caution; (2) only when the action in question has been induced by an agent having authority in such matters; and (3) only when special circumstances make it highly inequitable or oppressive not to estop the agency.
(Citations omitted). Kimberly-Clark Corporation v. Dubno, 204 Conn. 137,148 (1987). Assuming that all other requirements are otherwise met and leaving aside the issue of utilizing estoppel to overcome a lack of subject matter jurisdiction (sovereign immunity implicating the issue of subject matter jurisdiction), a claim of estoppel against the State must fail here for the same reasons that undermine any claim of waiver: just as the executive cannot waive sovereign immunity, that incapacity likewise prevents a finding, as required, that the action in question has been induced by an agent having authority in such matters. Simply stated. neither the Attorney General nor his representatives have the requisite authority to consent to suit against the State.
The Court, having heard the parties and considered their respective submissions, hereby enters a declaratory ruling that Counts One (fraud in the inducement) and Four (tortious interference with business relationships) Morin's amended arbitration complaint are not permissible claims against the Plaintiffs within the meaning of General Statutes § 4-61. It is ordered that Morin be, and hereby is, permanently enjoined from submitting, asserting or otherwise presenting evidence on said counts in the pending arbitration proceeding. It is further ordered that Defendant AAA be, and hereby is, enjoined from hearing or otherwise proceeding with arbitration on said counts.[6]
Solomon, J.