Betty FERGUSON *v.* Nancy GRADDY

77-348                                    565 S.W. 2d 600

Opinion delivered May 8, 1978
(Division I)
[Rehearing denied June 12, 1978.]

*Warren E. Dupwe*, for appellant.

*Barrett, Wheatley, Smith & Deacon*, for appellee.

JOHN A. FOGLEMAN, Justice. Betty Ferguson brought suit against Nancy Graddy seeking recovery for personal injuries suffered when Mrs. Ferguson was struck by an automobile driven by Mrs. Graddy, when Mrs. Ferguson was crossing East Matthews Street in Jonesboro, in a pedestrian crosswalk at the entrance to St. Bernard's Regional Medical Center. The trial resulted in a jury verdict in which fault was apportioned, 51 percent to Mrs. Graddy and 49 percent to Mrs. Ferguson, and the plaintiff's damages fixed at $10,230. Appellant seeks reversal on three grounds. We find no merit in any of them and affirm.

The first ground is an assertion of error on the part of the trial judge in refusing to permit appellant to show that there was a speed limit sign near the scene. Appellee presented a motion in limine asking that appellant not be permitted to produce evidence pertaining to this sign. Appellant offered to prove that there was a sign bearing the words "Speed Limit 15" facing traffic approaching from the direction Mrs. Graddy did. It was stipulated that there was no ordinance regulating vehicular speed in the area. Appellant offered this evidence, not for the purpose of showing the speed limit at the point, but to show that Mrs. Graddy was not keeping the proper lookout. There was evidence that, when struck, Mrs. Ferguson was in the middle cross-walk of three in front of the hospital. There were four posts at each cross-walk five to eight inches in diameter placed four to six feet apart. There were two signs facing the direction from which Mrs. Graddy approached bearing the words "Stop Watch for Pedestrians." Skidmarks to the rear of her automobile as it was stopped measured 44 feet 4 inches. The speed limit sign was some 270 feet from the middle cross-walk in which Mrs. Ferguson was struck.

Even though we cannot say that evidence of this sign was totally irrelevant to the question whether Mrs. Graddy was properly attentive and maintaining a proper lookout, we are unable to say that exclusion of the evidence was improper. The question whether Mrs. Graddy was negligent in driving at a speed greater than was reasonable and prudent under the circumstances was also an issue for the jury's determination. Evidence pertaining to this sign, under these circumstances, would be calculated to mislead the jury on the

issue of speed and the danger of unfair prejudice on this account would substantially outweigh the slight relevance it would have had on the lookout issue. We cannot say that the trial court erred in this respect. Ark. Stat. Ann. § 28-1001, Rule 403 (Supp. 1977).

Appellant also contends that the court erred in excluding from the jury evidence of payments of $8,020.34 made to her on behalf of Mrs. Graddy prior to trial. She argues that these payments were made an issue of fact by the pleadings and were an admission of liability. Appellee had alleged, in an amendment to her answer, that this amount had been paid on her behalf for medical expenses and loss of wages due to appellant's injuries and that, if any judgment was entered against appellee, credit should be given for these payments. In reply, appellant alleged that the amendment to appellee's answer was an admission of liability, denied the payments, demanded strict proof and asserted that if appellee were to prove such payments, the amount should not be set off against a judgment, but should be presumed to have been taken into consideration by the jury in arriving at its verdict.

A hearing on the question was held in camera. Appellant testified that she received checks totalling $8,020.34 from one Wayne Keaton, on behalf of MFA, paid in behalf of Nancy and Mike Graddy. She understood the recitations in the receipts she signed that these payments were to be credited to the total amount of any final settlement or judgment in her favor for damages arising from the accident. Thus there was no real issue of fact, as to the amount of payments or the stipulation as to the condition under which they were paid, in spite of the formal denials in the pleading filed by Mrs. Ferguson. Mrs. Ferguson did say, in response to leading questions, that she understood at the time she signed the receipts that Mrs. Graddy was liable for the payments and that MFA Insurance was her automobile insurance carrier. This question and response followed:

Q. And was this the same man that brought these payments out to you who told you that it was all Mrs. Graddy's fault and that she was liable?

A. Yes, he did.

There is no evidence whatever that Wayne Keaton was authorized to make admissions on behalf of appellee. No evidence that there had been any admission of liability was proffered at the trial. At the in camera hearing, appellant only asserted that the handling of the matter of payments in this manner was prejudicial to her in that she had been prevented from showing "all the facts relative to the case, including examination of certain witnesses who were acting and presenting themselves as agents of the defendant." If there were admissions of liability by authorized agents of appellee, this procedure did not necessarily prevent appellant from presenting evidence of them. No such witnesses were called by appellant.

It is not contended the receipts for payments signed by appellant contained any admission of liability. Only one of them mentioned Nancy Graddy and it recited that the payment was made on behalf of Michael and Nancy Graddy. The others recited payment on behalf of either Mike or Michael Graddy. Furthermore, it is not contended that the payments were made in response to any demand by appellant. So far as this record discloses they were purely voluntary. Appellee's motion, which was granted after the hearing in camera, was that no mention be made by either party during the course of the trial of the payments for lost earnings and medical expenses, particularly as an admission of liability. We do not take the granting of this motion to have prohibited any evidence of an admission of liability other than the payment of money itself, if the admission were made by someone authorized to do so.

Appellant has not shown, to our satisfaction, any reason why Ark. Stat. Ann. § 28-1001, Rule 409 (Supp. 1977) is not controlling in this case. It makes evidence of payments, such as those made here, inadmissible to prove liability for the injury. There are good reasons for such a rule. See II Wigmore on Evidence 159, § 283a (and Supp. 1977). Annot. 25 ALR 3d 1091, 1092. A very good reason is that it is to the best interest of society and in keeping with the mores of the community that humanitarian and benevolent instincts not be hobbled by the hazard that assistance to an injured person be taken as an admission of liability in a personal injury action, when even lawyers and judges experience great difficulty in

agreeing on such questions. See *Meegal v. Memphis Street Railway Co.*, 34 Tenn. App. 403, 238 S.W. 2d 519, 20 ALR 2d 286 (1950). The amounts paid here could not have been recovered by appellee if the jury had held that she was not liable. See *Edwards v. Passarelli Bros. Automotive Service, Inc.*, 8 Ohio St. 2d 6, 37 Ohio Ops. 2d 298, 221 N.E. 2d 708, 25 ALR 3d 1087 (1966) and Annot. 25 ALR 3d 1091. As a matter of fact, the payments here will exceed the judgment in favor of appellant and no effort has been made to recover the excess.

Appellant also contends that the trial court erred in denying her motion for new trial. That motion was based upon the fact that the amount of the verdict equals the exact amount of appellant's medical expenses of $3,080 and lost wages of $7,150. Thus, says appellant, the jury refused to award damages for permanent injuries, past and future pain and suffering, and for a scar, in spite of the fact that evidence concerning these matters was undisputed and the jury was properly instructed that damages for these items were recoverable. Appellant relies upon such cases as *Tompkins v. Duncan*, 255 Ark. 491, 501 S.W. 2d 210 and *Law v. Collins*, 242 Ark. 83, 411 S.W. 2d 877, as authority for the granting of a new trial where the jury has refused to award damages for compensable items. In order to sustain appellant's position, it would be necessary for us to conclude that the jury did award $7,150 for lost earnings. This may be the case, but on the record before us the matter is certainly not beyond question.

The evidence disclosed that, at the time of the injury, Mrs. Ferguson was earning $2.75 per hour and that she worked a 40-hour week. Her treating physician testified that he released her to return to work on March 1, 1976. She was unable to work only 47 weeks. There was testimony tending to show that upon her release, she was offered three different positions by her employer at the time of the injury at the same wage scale she had been paid previously. If the jury found that she lost no wages except for this 47 weeks, the total loss would amount to $5,170. If so, the total pecuniary loss amounted to $8,248.00 rather than $10,230. We cannot say that the trial court erred in denying a new trial.

The judgment is affirmed.

We agree. HARRIS, C.J., and GEORGE ROSE SMITH and HOLT, JJ.