WEST UNION d/b/a Orgill Brothers and Company and
William C. White II *v.* Allen VOSTATEK

89-268                                           788 S.W.2d 952

Supreme Court of Arkansas
Opinion delivered May 7, 1990

*Penix Law Firm*, by: *Bill Penix* and *Richard L. Castleman*, for appellants.

*Richard S. Paden*, for appellee.

DAVID NEWBERN, Justice. This is an appeal of a judgment in favor of the appellee, Allen Vostatek, who was injured as the result of the bus in which he was a passenger being struck by the trailer of an oncoming tractor-trailer rig. The truck, which belonged to appellant West Union, was being driven by appellant William C. White, II. The appellants conceded their liability and went to trial only on the damages issue. The appellants, who will be referred to collectively as "West Union," raise two points of appeal. They contend testimony about the cost of surgery Mr. Vostatek might have to undergo in the future should not have been admitted into evidence because of the lack of reasonable certainty that such surgery would be required. We hold that the medical evidence was sufficient to permit testimony about the cost of surgery. They also contend the $175,000 jury verdict was the product of passion and prejudice on the part of the jurors induced by evidence in the case of Glenda Rogers, another victim of the accident, which was consolidated with this case for trial apparently without objection. We hold the trial court did not abuse its discretion in refusing new trial or remittitur. We affirm the judgment.

Mr. Vostatek was a student at a vo-tech school in Mountain Home. The school bus in which he was riding was returning him to his home in Melbourne. The bus was going up a hill toward a blind curve near Calico Rock when West Union's 18-wheel rig came around the curve. Mr. White apparently lost control of the truck. The trailer swung past the cab, and the rear of the trailer struck the front of the bus. Just after the accident, Vostatek, who had been thrown from one side of the bus to the other, saw blood on his shirt. He looked down and saw Ms. Rogers, who had been seated ahead of Vostatek, in the floor of the bus. Her face was

badly lacerated, and he realized the blood on his shirt was hers.

Mr. Vostatek did not think he had been hurt. He got out of the bus and attempted to obtain help for the several passengers who were injured. He refused treatment at a hospital emergency room. The next day, however, he missed school because of sore back muscles. Upon returning to school, he could not stay an entire day due to pain. At the suggestion of his teacher, he visited his family physician, Dr. Burnett, who took x-rays and prescribed medication. Vostatek testified he did not return to the doctor for many months because he thought the problem would go away in time.

Walter Vostatek, Allen Vostatek's father, testified that after completing the vo-tech course, Allen "complained about his back so much . . . he couldn't work the jobs he had." Allen Vostatek went to work for his father in a laundry. He testified he continued to have pain which increased during long periods of standing or sitting. He had trouble sleeping.

Some 13 months after the accident and after having first seen Dr. Burnett, Allen Vostatek went to Dr. Schmidt, a chiropractor, who treated him for six months and then referred him back to Dr. Burnett for a CT scan. At the time of the trial, Dr. Schmidt was still treating Vostatek. Several other doctors did examinations or gave opinions based on radiology reports. Their testimony will be discussed below.

### 1. Future surgery testimony

Allen Vostatek contends we should not consider this point because there was no timely objection to the testimony about the cost of future surgery and, if there were, West Union did not obtain a ruling from the court on the objection. While we have some inclination to agree, we need not decide that issue because we find a sufficient foundation for the testimony.

The deposition of Dr. Frank Petkovich, an orthopedic surgeon and spine specialist, was read into evidence. Dr. Petkovich testified that Allen had a bulging disc at L4-5 and a mild bulge at L3-4. He stated that a very minor injury could cause a bulging disc to herniate and that increased pain would be a factor to consider in recommending surgery. He said Allen was not a candidate for surgery "at this point," but that the possibility

of surgery was not sheer speculation as the injury was permanent and there was "an increased chance of having . . . recurrent lumbar spine problems" requiring "lumbar spine surgery." He said that sometimes additional surgery is needed, and the surgery fee would be about $2,500 and the hospitalization cost would be about $15,000.

Dr. Stevenson Flanigan, head of the Department of Neurosurgery at the University of Arkansas Medical School, examined Allen for West Union. In his deposition he stated Allen already had symptoms of nerve root damage which included pain extending into one extremity with numbness or muscle weakness. Allen had described to him lower back pain at times radiating into his left thigh. Dr. Flanigan testified he saw no need for surgery "at this point."

Dr. Schmidt read into the record part of a letter from Dr. Bert Park, a neurosurgeon to whom Allen had been referred by Dr. Burnett. The letter stated that if true radicular pain should occur, "he may well require surgery in the future but that would not be advisable at the current time." Dr. Schmidt then testified that it was certain that radicular pain would occur in the future.

Arkansas Model Jury Instruction 2204 deals with future medical expense as an element of damages. It permits recovery for "[t]he reasonable expense of any necessary medical care" and, if applicable, "including. . . the present value of such expense reasonably certain to be required in the future." We have held that future medical expenses need not be proven with the same specificity as past medical expenses. *Matthews* v. *Rogers*, 279 Ark. 328, 651 S.W.2d 453 (1983). Consistent with the model instruction, we have mentioned the showing of a "degree of medical certainty" as evidence bolstering recovery of "future medication," *Williams* v. *Gates*, 275 Ark. 381, 630 S.W.2d 34 (1982).

In addition to the medical testimony that Allen had bulging or herniated discs, there was Dr. Park's letter stating that surgery might well be required if there were true radicular pain in the future, we have Dr. Schmidt's testimony that such pain was sure to occur 10 to 12 years hence or sooner. We regard the evidence as sufficient to establish a degree of reasonable certainty that surgery will someday be required to correct or alleviate Allen

Vostatek's condition.

### 2. Excessive damages

The standard of review is whether the damages are so excessive as to shock the conscience of the court or demonstrate that the jury was motivated by passion or prejudice. *Bill Davis Trucking, Inc.* v. *Prysock*, 301 Ark. 387, 784 S.W.2d 755 (1990); *Mustang Electrical Services Inc.* v. *Nipper*, 272 Ark. 263, 613 S.W.2d 397 (1981). The evidence was sufficient to show that about the only job Allen could hold was one working for his father who understood his physical condition. His employability is obviously affected as is his general prospect for the enjoyment of life. He must avoid activities such as water skiing and sports in which he once participated. Our conscience is not shocked by a $175,000 award to a 21-year-old man with a painful back injury with which he can expect to have to deal for his anticipated life expectancy of over 57 years.

West Union compares this case with others where we have found the damages to be excessive, *e.g., Bilford* v. *Humphrey*, 244 Ark. 211, 424 S.W.2d 526 (1968), and points out that the special damages proven here are negligible by comparison. It does not matter that Allen's past medical expenses have been negligible. The jury's award was not segmented. We cannot know what portion of it was for pain and suffering, mental anguish, lost earning capacity, or future medical expenses. Each case must be determined on its facts, *Mustang Electrical Services, Inc.* v. *Nipper, supra*, and we cannot say the jury was unjustified in holding that a young man with this sort of injury had been damaged in the amount given or that the amount showed passion or prejudice on the jury's part.

West Union argues that the jury was impassioned by pictures of the bus taken after the accident and by hearing evidence that Glenda Rogers' injuries resulted in bad scarring and that her medical bills had not been paid when she submitted them, causing her to be harassed by bill collectors and physicians' offices. The verdict for Ms. Rogers was $85,000. It is pointed out that we wrote in *Hot Springs Street Railway* v. *Jones*, 234 Ark. 693, 354 S.W.2d 278 (1962), that failure to pay bills is immaterial to the issue of compensatory damages. While it may be that immaterial testimony was given with respect to Ms. Rogers, we

cannot conclude that would have prejudiced the jury in this case. We are given no reason to assume the jury would transfer its prejudice, if any, so as to favor Allen Vostatek even if it had been unduly impassioned by such testimony.

Affirmed.

Turner, J., concurring in part and dissenting in part.

Otis H. Turner, Justice, concurring in part and dissenting in part. Arkansas Model Jury Instruction 2204, Measure of Damages — Medical Expense — Past and Future, is a statement of the law that supposedly exists in this state. Any deviation from this statement of law in the form of an alternative instruction must be supported by a finding by the trial judge that the model instruction does not accurately state the law. Arkansas Supreme Court Per Curiam Order of April 19, 1965, AMI Civil 3d at VII.

Regarding past and future medical expenses that a jury may grant, AMI Civil 3d 2204, provides for an award of "[t]he reasonable expense of any necessary medical care, treatment and services received, . . . and the present value of such expense *reasonably certain* to be required in the future." (Emphasis added.)

Prior to the trial of this case, the appellants filed a motion in limine to exclude any testimony regarding the medical procedure for a discectomy and any testimony relating to the cost of that surgical procedure. The appellee responded by stating that a proper foundation would first be established before introduction of the testimony.

Prior to the appellee reading the medical depositions into evidence, the appellants' motion was renewed. The court ruled that the cost of any future surgery could not be introduced unless it was established by the physician that there was a substantial likelihood that surgery would be necessary. From a careful review of the abstract and the briefs, I find no evidence to indicate that a future discectomy or any other surgical procedure would likely be required. Yet evidence of the anticipated cost of that surgical procedure ($17,500) was introduced and submitted to the jury.

The evidence indicated that the appellee's total medical expenses up to the date of the trial amounted to $3,122, including

$2,306 for treatment by a chiropractor — services the medical doctors opined were not needed. The record also reveals that the appellee was never admitted to a hospital and that he missed no work. Further, the evidence showed that the appellee was given a five percent permanent partial impairment to the body as a whole by the medical doctors as a result of his back injury, while the chiropractor set that permanent impairment as high as 37 percent.

The verdict in this case amounted to $175,000.

It seems clear that the inadmissible testimony influenced the verdict. I would direct a remittitur of $17,500, or a remand of the case for a new trial, the election to lie with the appellee.