Dunavant Charles HICKMAN and Pernie Boyles, Guardian of the Estate of Tracy Butler, An Incompetent *v.* The TRUST OF HEATH, HOUSE AND BOYLES; Julian B. Fogleman, Trustee and Individually; Heath and House Construction Co., Inc., James A. Heath, J.O. House; Grace Ann Stephenson; Claudia Heath Howe; David Randall House; Paula Jeane House and Jeffrey Lewis House

91-310                                          835 S.W.2d 880

Supreme Court of Arkansas
Opinion delivered July 20, 1992

334

*Donald A. Forrest*, for appellant Dunavant Charles Hickman.

*William P. Rainey*, for appellant Tracy Butler.

*Sloan, Rubens, & Peeples*, by: *Kent J. Rubens;* and *Rieves & Mayton*, by: *Martin W. Bowen*, for appellees.

STEELE HAYS, Justice. Appellants brought this suit in equity to have certain writings declared to be an express trust for their benefit. The trial court held the evidence was insufficient to establish that the plaintiffs were designated beneficiaries and they appeal from that order. We affirm the chancellor.

Heath & Scarbrough Construction Company, Inc., owed $19,171.08 to each of its three stockholders, James Heath, J.O. House and Mason Boyles. Each stockholder held a promissory note from the corporation.

On November 6, 1973, at a special meeting of the directors of Heath & Scarbrough, the establishment of the Trust of Heath, House & Boyles was the subject of discussion. The minutes of that special meeting read as follows:

> The chairman stated the purpose of the special meeting to discuss the sale of the company's office building and warehouse property to a trust being created on this day by James O. House, James A. Heath, and D. Mason Boyles known as "Trust of Heath, House and Boyles."

> The chairman pointed out that the corporation on this date recognized that it owed to each Heath, House and Boyles, notes of $18,399.80 plus accrued interest thereon of $771.28 ($19,171.08 total to each) for an aggregate sum of $57,513.24. Further, the chairman noted that as of this date the corporation has been notified that each of the above has transferred his note to the above referred to trust and hereby instructs the secretary, upon surrender of the individual notes, to issue a new note payable to "Trust of Heath, House & Boyles" in the amount of $57,513.24, interest at 6% payable on demand. The secretary proceeded to immediately perform these acts and instructs the chairman that they have been accomplished.

> The chairman then presented an appraisal dated and received this date, November 6, 1973, from Robert E. McCarley on the company's office building property, such appraisal having been authorized by Mr. Heath. After lengthy discussion, the appraised amount of $59,000.00 was agreed to be a fair and accurate amount. The warehouse property was discussed and it was mutually agreed that $8,000 was a fair and accurate value of that property.

> After further discussion, motion was made, seconded and unanimously passed that the company office property and the warehouse property be sold to the "Trust of Heath, House and Boyles" for $67,000.00 and that the consideration for such sale be:

| | |
|---|---|
| Cancellation of the note due "Trust" | $57,513.24 |
| Execution of a 6% demand note from "Trust" to corporation | 9,486.76 |
| Total consideration | $67,000.00 |

The chairman was instructed and authorized by the vote of the Board to perform such acts as to have these transactions, agreed by all parties, to be taking place as of this date, to be property documented. [A.119-121.]

The minutes are signed by Heath, as chairman and as a director, by House, as a director, and by Mason Boyles, as secretary of the corporation. Beneficiaries are not designated in these minutes.

A warranty deed dated November 6, 1973, was then executed by Heath & Scarbrough (by James Heath as President, and J.O. House as assistant secretary) to the Trust of Heath, House & Boyles. The deed was not recorded until 1976.

A year later, on December 9, 1974, a trust agreement was prepared, referring back to November 6, 1973, and stating that the agreement was executed as of November 6, 1973. This agreement is signed by James Heath and J.O. House, but not by Mason Boyles. The trust agreement names beneficiaries for all three trustors, designating the appellants as beneficiaries of Mason Boyles.

A later warranty deed was prepared for the purpose of correcting defects in the earlier deed and acknowledged on September 1, 1977, by James Heath as President and J.O. House as Secretary. The deed is not recorded but was delivered to the trustee.

Mason Boyles died in 1990 without ever having signed the trust agreement. The evidence is undisputed that he was aware of the trust agreement and refused to sign it.

The trust agreement was to terminate after the eleventh year. At that time appellants were notified by James Heath and J.O. House and their beneficiaries that appellants would not be recognized as beneficiaries of the trust because Mason Boyles had not signed the trust agreement. The appellants, a stepdaughter

and a grandson, filed suit to have the trust declared valid as to them as beneficiaries of Mason Boyles. An intervention was filed by Dunavant Boyles, Gwen Boyles Odom and Belinda Gail Skillen, who are Mason Boyles's heirs at law, children of an earlier marriage.

The case was tried to the chancery judge in Crittenden County. An attempt was made by the appellants to show an express trust through both the minutes of the special board meeting, which lacked the designation of any beneficiaries, but was signed by Mason Boyles, and the trust agreement prepared a year later, which contained all the elements of a trust but which was never signed by Boyles. There was evidence attempting to show that the beneficiaries in the trust agreement were parties Boyles had intended to be beneficiaries of the trust. However, there was no evidence produced to show who was the source of the names supplied for the Boyles beneficiaries in the trust agreement and there was evidence of three different versions of Boyles beneficiaries, beyond that in the trust agreement. There was no proof that Boyles intended to sign the trust agreement but was somehow prevented from doing so.

At the end of the plaintiffs' case, a motion to dismiss was made. The motion was granted by the court on the basis that plaintiffs had not met their burden of proof, and failed to prove by clear and convincing evidence that they were the beneficiaries of the trust. Appellants appeal from that order.

Appellants' principal argument on appeal is that the trial court erred in finding that appellants were not the named beneficiaries of Mason Boyles under the Heath, House & Boyles Trust. Appellants argue that we should find either the signed minutes of the special board meeting of November 6, 1973, or the trust agreement sufficient to create a valid express trust.

The first document, the minutes, even if otherwise sufficient, was lacking because no beneficiaries were designated. A beneficiary is an essential element of a trust. W. Fratcher, II *Scott on Trusts* § 112 (1987); 76 Am. Jur. 2d *Trusts* § 59 (1992).

It is stated in *Scott, Id*:

> Where the owner of property declares himself trustee for persons to be selected by him, the selection to be wholly

within his control, no trust is created and the settlor continues to hold the property for his own benefit. *A trust will not arise unless and until he names the beneficiaries.* Similarly, if the owner of property transfers it to another in trust for such persons as the settlor may designate, no one other than the settlor has a beneficial interest in the property until he designates others as beneficiaries. In such a case there is a resulting trust for the settlor, and he can at any time require the trustee to return the property to him. [Our emphasis.]

█ █ The second document, the unsigned trust agreement, under the statute of frauds was not effective without his signature. Ark. Code Ann. § 4-59-103(3)(1) (1984) provides:

All declarations or creations of trusts or confidences of any lands or tenements shall be manifested and proved by some writing signed by the party who is or shall be by law enabled to declare the trusts, or by his last will in writing, or else they shall be void.

This is also the general rule. *See* G. Bogert, *Trusts and Trustees* §§ 81 -87 (1984).

The trust agreement, written up a year after the special meeting of the board of directors, remained in existence for six years before Mason Boyles' death, and it is undisputed that he was aware of the agreement, steadfastly refused to sign it, and died without doing so. Appellants have cited no authority, nor are we aware of any, that would remove this case from the requirement of the maker's signature under the statute of frauds. This is precisely the kind of situation to which the statute of frauds was intended to apply.

█ Appellants insist that even if these two documents are separately incomplete, they can be read together, each supplying one deficiency for the other. The general rule does permit multiple writings to determine if a trust has been created. G. Bogert, *Trusts & Trustees* § 90 (1984). However, not all writings qualify and the case before us presents such a situation.

More difficult problems arise where there is a writing signed by the party enabled to declare the trust and also a document unsigned by that party. Throughout this section

"signed" is used as meaning "signed by the party by law enabled to create or declare the trust," and "unsigned" is used with the opposite meaning. A paper signed by a party having no power to create a memorandum is "unsigned" for the purposes of the Statute. If one assumes that both signed and unsigned papers are incomplete, but that the signed paper expressly incorporates the unsigned into it by direct statement amounting to an authentication of the unsigned paper, it is naturally held that the two instruments may be used together. In the converse case, however, where an unsigned document purports to incorporate a signed paper into itself, the Statute is not satisfied. The signer has not validated the unsigned paper. The incorporation leaves the combined writings as having no more force than a single unsigned paper.

G. Bogert, *Trusts & Trustees* § 90 (1984).

█ Clearly, the signed writing in this case, the minutes, does not expressly incorporate the unsigned paper by direct statement. At best, it contains an ambiguous provision directing that the "transactions" of the day be "properly documented." *See Minutes, supra.* That statement in the minutes does not constitute a direct statement that expressly incorporates a trust agreement written a year later, particularly where the agreement contains provisions not mentioned at the board meeting.

█ Appellants propose to establish the beneficiaries by proof of the trustor's intent through parol evidence. That is not consistent with the law.

Oral evidence will not be received to supply terms in the writing which are wholly absent, for example, the name of the beneficiary, the description of the land to which the trust attached or other essential terms of the trust. If the memorandum is deficient in regard to one or more of its essential items, parol proof cannot be used to supplement it. . . .

The courts have however, distinguished between using oral evidence to supply a term entirely missing and offering oral testimony to clear up ambiguities, explain doubtful terms and give a setting to the writing. If all the

essential elements of the writing are present, they may be clarified by nondocumentary evidence.

*G. Bogert, supra* at § 88.

But we are not here confronted with an ambiguity or the need for an explanation of terms. There was simply no mention of any beneficiaries in the minutes. That ends the inquiry.

■ Appellants argue in the alternative that should we agree with the trial court that there was no express trust as to the Boyles beneficiaries, we should find that a trust arose by implication in favor of these beneficiaries. What type of implied trust appellants propose is not clear. The term "implied trusts" encompasses both constructive trusts and various types of resulting trusts. *See* 76 Am. Jur. 2d *Trusts* §§ 159-163 (1992); W. Fratcher, V *Scott on Trusts* §§ 404-404.2 (1989) (describing the three types of resulting trusts) and W. Fratcher, V *Scott on Trusts* § 462 (1989) (describing constructive trusts). However, we need not reach that question as nothing appears in the abstracted record reflecting that an argument for any type of implied trust was formulated in the trial court, or that any ruling was given. Having failed to adequately raise the point below or obtain a ruling on the matter, appellants have waived review of that issue.

■ Appellants have raised two other points that require no extended discussion. The first involves the admissibility of testimony as to statements by Boyles reflecting his intent with respect to the beneficiaries of the trust. The trial court excluded the testimony and appellants assign error to his ruling. It was not necessary for the chancellor to rule on these objections. Parol evidence cannot be used to prove an express trust of land when it is used to supply terms that are wholly absent. *G. Bogert, supra* § 88.

The other point concerns a letter from the trustee to counsel for the appellants written on behalf of the beneficiaries of Messrs. House and Heath, offering $84,000 to the Boyles beneficiaries as "full and final settlement with them for their interest in the assets of this trust." The trial court ruled the letter was inadmissible under A.R.E. Rule 408 which prohibits evidence of offers of compromise when there is a "claim which was disputed as to

validity or amount." Appellants maintain there was no evidence that at the time the letter was sent in 1986 there was any dispute and, therefore, Rule 408 is inapplicable.

We are not persuaded by the argument. Certainly an incipient dispute was in the offing, if on no other basis than Mason Boyles's refusal to sign the trust agreement, on which appellants' claim largely rested. Besides, the evident purpose of the letter was to show that beneficiaries of the other settlors, Heath and House, recognized appellants' status as beneficiaries of Mason Boyles. Whether that is probative of what Boyles's intentions were is debatable, at best, and could not have substantially affected appellants' case. A.R.E. Rule 103(a).

Affirmed.

BROWN, J., not participating.