WAL-MART STORES, INC. *v.* Johnny LONDAGIN, Sue LONDAGIN, and Laura Perkins

00-1083 37 S.W.3d 620

Supreme Court of Arkansas
Opinion delivered March 1, 2001

*Davis, Wright, Clark, Butt & Carithers, PLC*, by: *Constance G. Clark*, for appellant.

*Mashburn & Taylor*, by: *Timothy J. Myers*, for appellees Johnny H. Londagin and Sue Londagin.

*Jones, Jones & Lushbaugh, P.L.C.*, by: *Lewis D. Jones*, for appellee Laura Perkins.

RAY THORNTON, Justice. We have jurisdiction of this case pursuant to Ark. Sup. Ct. R. 1-2 (b) (1) and (6) because the appeal requires us to construe Rule 408 of the Arkansas Rules of Evidence as it applies to the admissibility of evidence of an effort by Wal-Mart to satisfy a customer complaint during subsequent litigation by a third party seeking to recover damages arising out of the same transaction. The trial court ruled that Rule 408 did not require exclusion of the evidence, and the jury awarded damages. Wal-Mart brings this appeal contending that the trial court committed error in denying its motion to exclude this evidence, and asserts three additional points of appeal. We find no error and affirm.

The relevant facts are that on October 4, 1996, appellee, Laura Perkins, took her truck to the Wal-Mart Tire and Lube Express in Bentonville. Ms. Perkins requested that Wal-Mart change the oil in her truck and rotate the tires. When Ms. Perkins picked up her truck, she noticed that the tires had not been rotated. Wal-Mart moved the vehicle back inside and rotated the tires.

Later in the afternoon of October 4, 1996, Ms. Perkins was traveling on Highway 59 when the left front wheel came off of her truck, crossed the center line, and struck a vehicle owned and operated by appellee, Johnny Londagin, causing his vehicle to wreck. As a result of the wreck, Mr. Londagin sustained injuries. After the wreck, Ms. Perkins called Wal-Mart to report the accident. Wal-Mart sent representatives to the scene and provided Ms. Perkins with a rental car to continue her planned trip to Oklahoma. Wal-Mart then towed her truck back to their shop and had it repaired, all without cost to Ms. Perkins.

On January 13, 1998, appellee, Johnny Londagin and his wife, appellee, Sue Londagin, filed a complaint against Wal-Mart. The complaint sought damages for injuries sustained during the motor vehicle accident on October 4, 1996. The Londagins alleged that the accident was proximately caused by Wal-Mart's negligence and asserted that Wal-Mart failed to properly rotate Ms. Perkins's tires and failed to properly replace the lug nuts on the left front wheel of Ms. Perkins's truck. The complaint sought damages for personal injuries sustained by Mr. Londagin, including past and future medical expenses, pain and mental anguish, permanent disability, lost

wages, and loss of enjoyment of life. The complaint also sought damages for loss of consortium on behalf of Mrs. Londagin.

On February 11, 1999, the Londagins amended their complaint to add Ms. Perkins as an additional defendant. The complaint alleged that Ms. Perkins's negligence proximately caused the October 4, 1996, accident because she failed to inspect and to maintain control over her vehicle. On March 9, 1999, Ms. Perkins answered the complaint, denying all allegations of negligence, and filed a cross-complaint against Wal-Mart. On January 31, 2000, Wal-Mart filed a separate cross-complaint against Ms. Perkins alleging that her negligence proximately caused the accident.

On February 8, 2000, Wal-Mart filed a motion in *limine* requesting exclusion of certain evidence. Wal-Mart sought to exclude "evidence regarding settlement and matters relating to settlement." Additionally, Wal-Mart wanted to "exclude evidence regarding video cameras or lack thereof." A hearing was held to discuss Wal-Mart's requests, and on February 14, 2000, the trial court denied Wal-Mart's motion.

On February 15, 2000, a jury trial was held. After the Londagins's case-in-chief, Ms. Perkins was granted a motion for directed verdict, and her case was dismissed. At the conclusion of the trial, the jury awarded Mr. Londagin $125,000 in damages and awarded Mrs. Londagin $10,000 in damages. It is from this judgment that Wal-Mart appeals, raising four points on appeal.

In its first point on appeal, Wal-Mart argues that the trial court erred when it allowed the Londagins to introduce evidence of Wal-Mart's actions seeking to satisfy Ms. Perkins's complaint. The Londagins introduced evidence at trial that immediately after the accident, Wal-Mart employees came to the scene of the accident, provided a rental car for Ms. Perkins, and towed and repaired Ms. Perkins's truck. Wal-Mart argued in a motion in *limine* that introduction of such evidence would be in violation of Rule 408 of the Arkansas Rules of Evidence. The trial court denied Wal-Mart's motion and allowed the Londagins to present testimony as to the actions taken by Wal-Mart after the October 1996 accident.

Rule 408 provides:

> Evidence of (1) furnishing, offering, or promising to furnish, or (2) accepting, offering, or promising to accept, a valuable consideration in compromising or attempting to compromise a claim which

was disputed as to either validity or amount, is not admissible to prove liability for, invalidity of, or amount of the claim or any other claim. Evidence of conduct or statements made in compromise negotiations is likewise not admissible. This rule does not require exclusion if the evidence is offered for another purpose, such as proving bias or prejudice of a witness, negativing a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution.

*Id.* We have strictly applied Rule 408. *See Elrod v. G & R Construction,* 275 Ark. 151, 628 S.W.2d 17 (1982) (holding that the mere mention of an offer of compromise or settlement was such an egregious error that the only remedy would be to declare a mistrial). We have held that offers are inadmissible to prove a party's liability on the underlying claim. *Ciba-Geigy Corp. v. Alter,* 309 Ark. 426, 834 S.W.2d 136 (1992). The rationale for Rule 408 is based upon the grounds of promotion of the public policy favoring the compromise and settlement of disputes. *See* John W. Strong, *McCormick on Evidence* § 266, at 183 (5th ed. 1999). The purpose of Rule 408 is to promote complete candor between the parties to the settlement negotiations. *Mo. Pac. R. R. Co. v. Ark. Sheriff's Boys' Ranch,* 280 Ark. 53, 655 S.W.2d 389 (1983). However, we have held that Rule 408 is not a blanket prohibition against the admission of all evidence concerning offers to compromise. *Edwards v. Stills,* 335 Ark. 470, 984 S.W.2d 366 (1998). We have further held that Rule 408 requires the exclusion of statements made in compromise negotiations of a defendant with a third party. *See Ark. Sheriff's Boys' Ranch, supra.* We have also held that offers to compromise or settle a disputed claim should be excluded from evidence even if no litigation has been commenced at the time of the compromise. *See Hickman v. Trust of Heath, House, and Boyles,* 310 Ark. 333, 835 S.W.2d 880 (1992).

In the case before us, the actions of Wal-Mart to satisfy the customer complaint made by Ms. Perkins had been completed before Mr. Londagin brought his complaint, and if the actions of Wal-Mart and Ms. Perkins constituted an offer of compromise and settlement of a disputed claim, the application of Rule 408 would exclude evidence of such an offer.

■ Our analysis of Rule 408 informs us that there are several elements that must be present in order to exclude evidence of compromise or offers to compromise. To invoke Rule 408: (1) there must be a claim; (2) the purpose of offering the evidence must be to prove liability for, invalidity of, or amount of the claim; (3)

valuable consideration must be furnished or offered to be furnished, or promised to be furnished, or valuable consideration must be accepted, offered, or promised to be accepted in an effort to compromise or attempt to compromise a claim; and (4) the claim must be disputed as to either validity or amount. *See* Ark. R. Evid. 408. The essential elements required to invoke Rule 408 protection have also been explained in McCormick's treatise on evidence. The treatise notes:

> to invoke the exclusionary rule, an actual dispute must exist, preferably some negotiations, and at least an apparent difference of view between the parties as to the validity or amount of the claim. An offer to pay an admitted claim is not privileged since there is no policy of encouraging compromises of undisputed claims, which should be paid in full.

*McCormick on Evidence, supra.*

Our first inquiry is whether a claim existed between Wal-Mart and Ms. Perkins when Wal-Mart came to the accident scene and assisted Ms. Perkins on October 4, 1996. At trial, Ms. Perkins testified that immediately after the accident she phoned the Wal-Mart tire and lube express center from the scene and was "really upset." She informed Wal-Mart that "there's no way we can fix the truck as it is sitting." Ms. Perkins was informed that someone from Wal-Mart would come and assist her.

■ Jon Kuntz, a district manager for Wal-Mart tire and lube express, testified that he spoke with Ms. Perkins on the day of the accident. She described what had occurred, and he verified that Wal-Mart had worked on her truck prior to the accident. He informed Ms. Perkins that he would come to the accident scene and then secured a rental car for her. Finally, Mr. Kuntz testified that he participated in completion of the "first report of incident" form. That form states that it is to be filled out "when there is a customer injury as well as when settling a claim in the field." After reviewing the evidence, we conclude that when Ms. Perkins telephoned Wal-Mart, in a disgruntled state, alleging that her wheel had come off of her truck shortly after Wal-Mart had rotated the tires on her truck, and informed Wal-Mart of the accident, she expressed a claim against Wal-Mart.

■ ■ It is clear that the Londagins were seeking to introduce evidence of Wal-Mart's actions to prove Wal-Mart's liability, thereby satisfying the second prong of our analysis. Additionally,

because there was certainly a showing that Wal-Mart furnished valuable consideration to Ms. Perkins to satisfy her claim, the third element of Rule 408 is also present in this case.

▮▮▮ The element remaining for analysis is whether Ms. Perkins's claim was disputed. The trial court concluded that the evidence did not demonstrate that Wal-Mart ever disputed the claim as to either validity or amount. The testimony showed that Ms. Perkins called Wal-Mart and notified it as to her claim. Wal-Mart responded to Ms. Perkins's claim by voluntarily bringing her a rental car, towing her truck, and repairing her truck. Wal-Mart towed and repaired Ms. Perkins's truck at no expense to Ms. Perkins, and according to her testimony, without her request that the services be performed. There is simply no showing that Wal-Mart disputed Ms. Perkins's claim, but rather the evidence supports the trial court's finding that Wal-Mart assumed responsibility for wholly paying the claim. The testimony established that Wal-Mart did not require Ms. Perkins to sign any paper work for the rental car or perform any act to authorize the repair of her truck. Moreover, Ms. Perkins testified that Mr. Kuntz apologized at the scene of the accident and assured her that "Wal-Mart would take care of everything." Based on the evidence, we cannot say that the trial court erred in finding that there was no dispute as to either validity or amount of Ms. Perkins's claim. We have held that evidentiary rulings are within the sound discretion of the trial court and will not be set aside absent an abuse of discretion. *Ozark Auto Transportation, Inc. v. Starkey*, 327 Ark. 227, 937 S.W.2d 175 (1997). Because we find no error in the trial court's finding that there was no dispute as to either validity or amount of the claim, we conclude that the trial court did not abuse its discretion in allowing the Londagins to introduce evidence of Wal-Mart's efforts to satisfy Ms. Perkins's claim.

In its second point on appeal, Wal-Mart contends that the trial court abused its discretion by admitting evidence relating to Wal-Mart's videotaping capabilities and the possible existence of a videotape from the tire and lube service center on the day Ms. Perkins's truck was repaired. In a pretrial motion in *limine*, Wal-Mart sought to keep such evidence from the jury. In a hearing on the motion, Wal-Mart argued that no videotaping occurred, but that if evidence regarding its videotaping capabilities was introduced, the jury might infer that a videotape of the work on Ms. Perkins's truck was destroyed, misplaced, or hidden. The trial court denied Wal-Mart's motion.

■ On appeal, Wal-Mart argues that the evidence relating to its videotaping capabilities was not relevant pursuant to Rule 401 of the Arkansas Rules of Evidence. Specifically, Wal-Mart contends that because it presented uncontroverted evidence that there was not a videotape of the service area on the day of the accident, then any evidence relating to Wal-Mart's videotaping capabilities would not be relevant. Rule 401 states that " 'relevant evidence' means evidence having tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." We have held that a trial court's ruling on relevancy is entitled to great weight and will not be reversed absent an abuse of discretion. *Arthur v. Zearley*, 337 Ark. 125, 992 S.W.2d 67(1999).

■ The trial court admitted testimony relating to Wal-Mart's videotaping capabilities and testimony regarding the possibility of a videotape of the service area on the date of the accident into evidence. The evidence was relevant because the case involved a negligence claim. If there was a videotape of the alleged negligent act, it would clearly be relevant. Alternatively, if there was a videotape and it was not made available by Wal-Mart, that evidence would also be relevant. We conclude that the trial court did not abuse its discretion in admitting evidence concerning whether Wal-Mart had videotaping capabilities and whether there was a videotape of the service area on the day the alleged negligent act occurred.

■ ■ In its third point on appeal, Wal-Mart argues that the trial court erroneously directed a verdict in favor of Ms. Perkins. In examining a trial court's ruling on a motion for directed verdict, we view the evidence in the light most favorable to the party against whom the directed verdict is sought and give it the highest probative value, taking into account all reasonable inferences deducible from it. *City of Little Rock v. Cameron*, 320 Ark. 444, 897 S.W.2d 562 (1995). A motion for directed verdict should be granted only if the evidence so viewed would be so insubstantial as to require a jury verdict for the party to be set aside. *Id.* Evidence is insubstantial when it is not of sufficient force or character to compel a conclusion one way or the other or if it does not force a conclusion to pass beyond suspicion or conjecture. *Id.*

At trial, Ms. Perkins's attorney moved for a directed verdict at the close of the Londagins's case-in-chief. The trial court granted this motion and found:

> I have done my best to pay attention to any testimony or evidence that indicated some sort of negligent behavior or inaction on the part of Ms. Perkins. Quite frankly, I see none.... I have listened to this testimony and I have heard nothing indicating that she was speeding or that she was not maintaining proper control of her vehicle, that her response[s] were late or improper. There has been no evidence that anybody else could have done anything other than what happened, no evidence that she should have had prior notice of the wheel before it fell off, something that would cause her to go ahead and stop. Nothing.... I think [customers] do not have a duty to go behind tire places like this to start second guessing, checking the work, unless something has placed them on notice that there is something amiss and that something is wrong.

On appeal, Wal–Mart contends that this ruling was erroneous because "there was evidence submitted from which the jury might well have assessed some degree of fault on the part of Ms. Perkins," citing Ms. Perkins's testimony. The testimony Wal–Mart considers sufficient to establish Ms. Perkins's negligence states in relevant part that:

> And then all of a sudden the truck — our truck started shaking really bad and we heard this bang and the truck shook. And I noticed out of the corner of my eye that this tire went by and I wondered whose tire that was because I don't remember hitting anything. There wasn't anything in the road. And I am looking off to the side of the road trying to get the truck off the road once I figured out that that was my tire. When the front end dropped, I just took it off the road.

 In determining whether the trial court correctly directed a verdict in Ms. Perkins's favor we must determine whether there was substantial evidence to establish that Ms. Perkins's actions were negligent. We have defined negligence as:

> the failure to do something which a reasonably careful person would do. A negligent act arises from a situation where an ordinarily prudent person in the same situation would foresee such an appreciable risk of harm to others that he would not act or at least would act in a more careful manner. While a party can establish negligence by direct or circumstantial evidence, he cannot rely upon inferences based on conjecture or speculation.

*Cameron, supra* (internal citations omitted). Applying this definition to the case now on review, we hold that the trial court properly

determined that there was insufficient evidence that Ms. Perkins acted negligently so as to submit that issue to the jury. There was no evidence presented that established that Ms. Perkins failed to do something that a reasonably careful person would do.

Specifically, there was no evidence that Ms. Perkins: (1) was speeding; (2) failed to maintain a proper look out; (3) failed to maintain control of her truck; (4) operated her truck when she knew it was unsafe; (5) failed to inspect her vehicle to insure it was in safe working condition; or (6) failed to use ordinary care in the operation of her truck. The evidence showed that as soon as Ms. Perkins realized that her vehicle was unsafe, she pulled immediately off the road. Accordingly, we hold that the trial court did not commit error in finding that there was no substantial evidence of Ms. Perkins's negligence, and in directing a verdict in her favor.

In its last point on appeal, Wal-Mart contends that the trial court committed error when it submitted the issue of Mr. Londagins's future medical expenses to the jury. Wal-Mart argues that the only evidence of Mr. Londagin's future medical expenses was speculative, and therefore, the issue should not have been submitted to the jury. We have held that future medical expenses need not be proven with the same specificity as past medical expenses. *Arthur, supra.* However, there must be some evidence that medical treatment will be necessary in the future. *Id.* We have further held that it is not speculation and conjecture to calculate future medical expenses where a jury has before it a history of medical expenses that have accrued as of the date of trial. *Williams v. Gates,* 275 Ark. 381, 630 S.W.2d 34 (1982). Finally, we have noted that the showing of a degree of medical certainty as evidence bolsters recovery of future medical expenses. *See West Union v. Vostatek,* 302 Ark. 219, 788 S.W.2d 952 (1990).

In light of these principles, we review the testimony presented at trial to determine whether there was sufficient evidence to submit this issue to the jury. Dr. Robert Taylor, Mr. Londagin's physician, testified at trial. He stated that as a result of the October 1996 automobile accident, Mr. Londagin developed carpal tunnel syndrome in his upper extremities and suffers from a midline abdominal wall injury which has caused some weakening of his anterior abdominal wall. Dr. Taylor further testified that he recommends surgery to repair Mr. Londagin's anterior abdominal wall. He also stated that Mr. Londagin would always have some discomfort as a result of the injury and the only way to repair the injury would be

to surgically close the defect. Dr. Taylor estimated that the surgical procedure would cost approximately $10,000.

Mr. Londagin also testified. He stated that he has an injury in his stomach or abdomen, attributed to the October 1996 automobile accident. He further testified that his injury causes him "problems" and that Dr. Taylor recommends surgery to correct his stomach injury. Mr. Londagin also stated that as a result of his injury, he experiences lower back pain when he works around his farm or exerts himself. Mr. Londagin further stated that when he "lifts," his injury causes him pain. Finally, he noted that if his conditions deteriorates, and the doctor recommends it, he would have surgery to repair his abdominal injury.

Wal-Mart argues that "the facts of this case fall squarely within the ruling of the Arkansas Supreme Court in *Arthur v. Zearley*, 337 Ark. 125, 992 S.W.2d 67 (1999)" and that because this case is so similar to *Arthur* then the trial court erred when it submitted the issue of Mr. Londagin's future medical expenses to the jury. Wal-Mart's argument is misplaced. In *Arthur, supra,* we reversed the trial court because it instructed the jury on future medical expenses when there was "no testimony by any physician that Mrs. Zearley will need future medical care, such as surgery, therapy, or medication." *Id.* We noted that "in the absence of proof that medical expenses were reasonably certain to be required in the future, the jury was forced to resort to speculation and conjecture." *Id.*

The facts in *Arthur* are distinguishable from the case now before us. In *Arthur,* there was no medical testimony that Mrs. Zearley would require future medical expenses. By contrast in the case *sub judice,* Dr. Taylor's testimony established within a reasonable degree of medical certainty that Mr. Londagin would require surgery in the future to repair his abdominal injury. We conclude that there was sufficient evidence upon which the jury could consider the issue of future medical expenses without resorting to speculation or conjecture. Accordingly, the trial court did not err in submitting this issue to the jury and denying Wal-Mart's motion for a directed verdict.

Affirmed.

CORBIN, J., not participating.

ARNOLD, C.J., dissents.

W.H. "DUB" ARNOLD, Chief Justice, dissenting. I disagree with the majority that the trial court was correct when it allowed the Londagins to introduce evidence of Wal-Mart's actions seeking to satisfy Mr. Perkins's complaint. I believe the trial court erred. I, therefore, must dissent. Rule 408 of the Arkansas Rules of Evidence, entitled "Compromise and offers to compromise" provides:

> Evidence of (1) furnishing, offering, or promising to furnish, or (2) accepting, offering, or promising to accept, a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount, is not admissible to prove liability for, invalidity of, or amount of the claim or any other claim. Evidence of conduct or statements made in compromise negotiations is likewise not admissible. This rule does not require exclusion if the evidence is offered for another purpose, such as proving bias or prejudice of a witness, negativing a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution.

(Emphasis added.)

It was undisputed in this case that approximately one hour after Laura Perkins had her pick-up truck serviced at Wal-Mart's Tire and Lube Express, the left front tire came off her vehicle as she was driving down Highway 59 near Gentry, Arkansas, leaving she and her three young children stranded on the side of the highway. Ms. Perkins, who was then on her way to attend a concert at the State Fair in Tulsa, Oklahoma, immediately telephoned Wal-Mart from the scene on her cellular phone. It was further undisputed that, shortly thereafter, two Wal-Mart employees arrived at the scene of the accident with a rental car for Ms. Perkins and helped transfer her belongings to the rental car so that she could be on her way. It was also undisputed that Wal-Mart made arrangements to have Ms. Perkins' vehicle towed to a repair shop and that Wal-Mart paid to have her truck repaired.

Obviously anticipating that the Londagins would attempt to utilize this evidence to prove liability on the part of Wal-Mart, counsel for Wal-Mart moved in limine to exclude it. It was Wal-Mart's contention that this evidence of the furnishing of consideration in attempting to compromise a disputed claim is expressly prohibited by Ark. R. Evid. 408. In responding to the call of its customer by providing her with alternative transportation and towing and repairing her vehicle, Wal-Mart clearly furnished a valuable

consideration to Laura Perkins in compromise or attempted compromise of a disputed claim. The Rule, as noted above, states that such evidence is "not admissible to prove liability for . . . the claim *or any other claim.*" (Emphasis added.)

Clearly, the Rule precludes the introduction of this evidence not only with respect to any claim Laura Perkins might have brought against Wal-Mart, but also with regard to the claim that Johnny and Sue Londagin brought against Wal-Mart in this case. The Londagins contend, and the trial court apparently agreed, that Rule 408 is inapplicable to this case because there was no evidence that the claim was disputed at the time of Wal-Mart's actions. The Rule does not define the word "disputed," and there are apparently no Arkansas cases wherein this particular portion of Rule 408 has been interpreted. Ms. Perkins testified at trial that she remembers "being really upset" when she telephone Wal-Mart. She recalled telling Wal-Mart that "there's no way we can fix the truck as it is sitting." Common sense would dictate that when Wal-Mart received this call from its customer, obviously demanding some kind of action on Wal-Mart's part, a disputed claim arose — at least from Wal-Mart's perspective. Evidence of Wal-Mart's efforts to compromise that claim by furnishing a loaner car and towing and repairing Ms. Perkins' pick-up truck is precisely the type of conduct that Rule 408 is designed to prohibit from the jury's consideration.

The "First Report of Incident" completed by Wal-Mart in connection with this accident confirms the fact that, at least in Wal-Mart's mind, this was an attempted compromise of a disputed claim. The incident report indicates at the top that the form is to be filled out "when there is a customer injury as well as when settling a claim in the field." The form specifies settlement authority on the store level of up to $250 and at the district manager level of up to $1,000. In this case, in the blank provided for the insertion of the settlement amount, the incident report reflects that the district manager authorized a rental car and towing. What further evidence of a disputed claim need there be?

Here, we have a call from a customer who, in her own words, was "really upset" with Wal-Mart and telephoned the company from the side of the road expecting retribution; further, we have action taken by Wal-Mart in an attempt to resolve the controversy by the furnishing of a rental car and the towing and repair of the

customer's damaged vehicle. Wal–Mart submits that these undisputed facts were more than sufficient to have compelled the exclusion of the evidence pursuant to Rule 408. I agree.

As the majority notes, this Court has strictly construed Ark. R. Evid. 408 in the past. In *Elrod v. G & R Construction Co.*, 275 Ark. 151, 628 S.W.2d 17 (1982), this Court went so far as to hold that the trial court should have granted the plaintiff's motion for a mistrial when a witness made a reference to settlement. Noting that the declaration of a mistrial is a drastic step, the Court nevertheless held that no admonition of the jury by the trial court would have been sufficient to eliminate any possible prejudice which might have resulted from the testimony.

In *Ferguson v. Graddy*, 263 Ark. 413, 565 S.W.2d 600 (1978), this Court affirmed a trial court's decision to exclude evidence of payments made to the plaintiff by the defendant's insurance carrier for lost earnings and medical expenses. Finding Ark. R. Evid. 409 controlling, the Court explained the rationale behind the Rule in these words:

> . . . it is to the best interest of society and in keeping with the mores of the community that humanitarian and benevolent instincts not be hobbled by the hazard that assistance to an injured person be taken as an admission of liability in a personal injury action, when even lawyers and judges experience great difficulty in agreeing on such questions.

*Id.* at 417-18, 565 S.W.2d at 602. The same reasoning applies to Rule 408, which, like companion Rule 409, is clearly intended to foster the settlement of claims, *whether or not a third-party claim* is involved. Clearly, by including the language "or any other claim," the Rule was intended to cover the very scenario we presently have before us.

If it is not entirely clear whether conduct on the part of a defendant is a true offer of compromise or simply an admission of liability, then the only safe position for the court to take is one of exclusion of the evidence. Appellant cites two Connecticut cases in which the Appellate Court of Connecticut has taken this very position. In *Rosales v. Lupien*, 50 Conn. App. 405, 717 A.2d 821 (1998), the plaintiff Sophia Rosales was injured when she fell on a basement staircase while moving a washing machine into defendant David Lupien's basement. Ms. Rosales sought to introduce evidence that Mr. Lupien offered to pay her medical bills and urged

her to make a claim against his homeowner's insurance policy. The appellant court affirmed the trial court's decision to exclude the evidence, holding that "[w]here it is not clear whether a statement is an offer of compromise or an admission of liability . . . and the motive of the declarant is subject to speculation and conjecture, the statement must be excluded." 717 A.2d at 822. The court held that Mr. Lupien's statements about paying the plaintiff's medical bills and making a claim against his homeowner's policy "were not clearly admissions of liability. Rather they are more accurately characterized as offers of compromise and hence are not admissible." *Id.*

In another Connecticut case, *Sokolowski v. Medi Mart, Inc.*, 24 Conn. App. 276, 587 A.2d 1056 (1991), a customer brought a negligence action against a drugstore for personal injuries she allegedly sustained in a slip-and-fall accident. The defendant contended that the trial court erred in allowing the plaintiff to testify that the store's assistant manager had offered to pay her medical bills. Specifically, the evidence was that two days after the accident, an assistant manager directed another store employee to "give her anything she wants, and [there will] be no charge for it" and concerning "any bills that occurred to bring them in and Medi Mart would take care of them."

The Connecticut Appellate Court held that the trial court should have excluded this evidence. Noting that the assistant manager's comments were ambiguous, the court nevertheless found that the statements "could have easily been construed as an offer to settle or compromise." The court went on to hold that "[w]here it is not clear whether the statement is an offer of compromise or an admission of liability [or other fact] and the motive of the declarant is subject to speculation and conjecture, the statement must be excluded." 587 A.2d at 1059. In other words, in order to promote the goal of settling disputes, any ambiguity which might arise from a defendant's statements or actions must be resolved on the side of finding such conduct to be an offer of compromise, rather than an admission of liability.

The very same kinds of statements were allegedly made by Wal-Mart's Tire and Lube Express manager, Jon Kuntz, in the instant case. Ms. Perkins was allowed to testify that she signed an affidavit stating that Mr. Kuntz told her not to worry, that Wal-Mart would take care of everything. To the extent that this Court finds any ambiguity with regard to Wal-Mart's employee's intent in making such statements, then the *Rosales* and *Sokolowski* cases stand for the proposition that all doubt must be resolved in favor of

upholding the policy underlying Rule 408 by deeming the statements to be offers of compromise.

It is important to note that no witness testified in this case that any Wal-Mart employee admitted fault in causing this accident. On the other hand, all of the Wal-Mart employees who did testify clearly expressed Wal-Mart's customer service policy — namely, to take whatever measures are necessary to keep its customers happy. Wal-Mart submits that, especially in light of its customer service policy, the only reasonable interpretation of Wal-Mart's conduct in this case is that it was an attempt to resolve what it perceived to be a disputed claim arising out of service performed on Laura Perkins's pick-up truck.

It is apparent from the Londagins' counsel's questioning of the witnesses at trial, and from his statements to the jury in closing argument, that the Londagins' intent in introducing these matters into evidence was to leave the jury with the impression that Wal-Mart was liable for negligence. In his closing remarks to the jury, the Londagins' attorney stated, "The reason they authorized the repairs is they knew that they were responsible for that." He later stated, "I think, ladies and gentlemen, that all the evidence will indicate that they knew they were responsible; that's the reason they took that vehicle; that's the reasons they had it towed to the Supercenter; that's the reason they had it towed out to Bob Morey's body shop; that's the reason they had it towed to Ron Blackwell . . . ."

Rule 403 of the Arkansas Rules of Evidence, which Wal-Mart also relied upon in support of its motion in limine, provides that even relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. Here, Wal-Mart clearly suffered prejudice by the repeated references throughout the trial to its attempts to resolve the claim with Ms. Perkins. The real issue in this case was whether Wal-Mart was negligent in performing the tire rotation on Ms. Perkins's vehicle. The fact that Wal-Mart responded to an agitated distress call from its customer, stranded at night with her three young sons on a rural highway while on her way to attend a concert in Tulsa, Oklahoma, should not have been allowed to be parlayed into an admission of liability.

In short, when the proof with respect to Wal-Mart's settlement of Laura Perkins's claim was admitted into evidence in this case, the public policy which underlies Rule 408 — that being to encourage

the settlement of claims without resort to litigation — was seriously thwarted, and, if allowed in this case simply because a third party is attempting to introduce said evidence, will further undermine the purpose of the Rule. For all of these reasons, I would reverse the trial court on this issue and remand the case, holding that it was an abuse of discretion for the trial court to allow this evidence in clear violation of Rule 408. I, therefore, respectfully dissent.